## Cerjio MARTINEZ, Appellant,

v.

## The STATE of Texas.

No. 344–02.

Court of Criminal Appeals of Texas.

Dec. 11, 2002.

John P. Mobbs, El Paso, for Appellant.

Jeffrey L. Van Horn, First Assistant State's Attorney, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined.

The State indicted appellee, Cerjio Martinez, for aggravated perjury based upon the allegedly false content of his written "Sworn Statement to the Grand Jury." The trial court granted appellee's motion to suppress that statement because the State did not orally warn Mr. Martinez of his rights under article 20.17 of the Code of Criminal Procedure.[1] The State appealed the suppression order, and the court of appeals affirmed.[2] We granted review[3] and hold that the court of appeals correctly declined to consider the State's argument, that article 20.17 did not apply, be-

cause the State never made this argument in the trial court. Nevertheless, we reverse and remand because the State's noncompliance with article 20.17, specifically its failure to orally inform Mr. Martinez of his *Miranda* rights, does not warrant the suppression of his written sworn statement that forms the basis of a perjury prosecution.

## I.

In June 2000, the El Paso Times and local television channel KVIA reported that they had obtained a document that had been allegedly leaked to them by a confidential informant within the El Paso Police Department. The police department, later joined by the Texas Rangers, launched a criminal investigation into the matter. Mr. Martinez, a Deputy Chief of Police, eventually became a suspect. Texas Ranger Calvin J. "Buster" Collins and Lieutenant David Norman of the El Paso Police Department interviewed Mr. Martinez at police department headquarters.

[1] Tex.Code Crim. Proc. Art. 20.17. Article 20.17(b) and (c) together require that, prior to any questioning of an accused or suspected person who is subpoenaed to appear before the grand jury, the person shall be given the following oral and written warnings: (1) "Your testimony before this grand jury is under oath"; (2) "Any material question that is answered falsely before this grand jury subjects you to being prosecuted for aggravated perjury"; (3) "You have the right to refuse to make answers to any question, the answer to which would incriminate you in any manner"; (4) "You have the right to have a lawyer present outside this chamber to advise you before making answers to questions you feel might incriminate you"; (5) "Any testimony you give may be used against you at any subsequent proceeding"; and (6) "If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you before making an answer to a question, the answer to which you feel might incriminate you."

[2] *State v. Martinez,* —— S.W.3d —— No. 08–01–00081–CR, 2001 WL 1599032 (Tex.App.-El Paso, December 17, 2001) (not yet reported).

[3] We granted review of the following questions:

1. Did the Court of Appeals err by refusing to consider an argument raised by the State that was necessary to the disposition of the appeal?
2. Does a party waive consideration on appeal of its contention that a legal theory is inapplicable to the case by its failure to present to the trial court its contention that the theory is inapplicable?
3. Should an alleged false statement, given by an individual as a result of a violation of Vernon's Ann. C.C.P. art. 20.17, be suppressed in a perjury prosecution arising from the false statement?

Mr. Martinez denied having any involvement in the leak. Lieutenant Norman later transcribed the handwritten notes he had taken during the interview into a formal "Sworn Statement to the Grand Jury."

Lieutenant Norman took the written statement to Mr. Martinez' home. Mr. Martinez read the statement and expressed concern that the officers had not previously advised him of the article 20.17 warnings, which were written on the front page of the statement. Lieutenant Norman responded that Mr. Martinez did not have to sign the statement, but that the officers were trying to save him "a trip to the grand jury." Mr. Martinez then read and edited the statement and agreed to sign a revised version before a notary. Lieutenant Norman typed the appropriate changes and later met Mr. Martinez at Mail Boxes Etc., where Mr. Martinez signed the statement and swore to its truthfulness before a notary. The State subsequently indicted Mr. Martinez for aggravated perjury, alleging that he falsely swore that he had not released any information to the media.[4]

The parties agree that Mr. Martinez was not given the oral warnings required under Article 20.17 for "an accused or suspected person who is subpoenaed to appear before the grand jury." The parties also agree that Mr. Martinez was not actually subpoenaed to appear before the grand jury and that he did not personally appear.

Mr. Martinez filed two motions to suppress his sworn statement. One characterized the document as a "grand jury" statement, subject to suppression for a failure to comply with article 20.17. The other motion characterized it as an involuntary written statement resulting from custodial interrogation and therefore subject to suppression for a failure to comply with article 38.22. At a hearing on these motions, the State argued that: 1) the document was a noncustodial grand jury statement, not an article 38.22 custodial confession; 2) the face of the statement, which contained the written article 20.17 warnings, showed substantial compliance with that law;[5] and 3) even if the officers had not substantially complied with article 20.17, that failure did not immunize any perjury within the sworn statement.

The trial court, in its oral ruling, ordered the statement suppressed based on the State's failure to comply with article 20.17. The court also noted that the custodial interrogation cases cited by Mr. Martinez were "not directly on point." Nevertheless, the trial court signed two written orders: one granting Mr. Martinez' *"Jackson v. Denno"* motion[6] to suppress the

---

**4.** The indictment alleged that Mr. Martinez falsely swore that the following statements were true:

"I have never heard anyone discussing anything about releasing any information to any unauthorized persons or the media.... As far as people from outside our (El Paso Police) (D)epartment discussing releasing information, I have not heard anyone ... talking about this."

"I have not discussed or been involved in planning with anyone to release any confidential information about the DeAngelis–Leon conflict...."

"I have not disclosed anything to ... the (El Paso) Times or the media ... as proof,

you can see, I have not been quoted in any articles."

**5.** *See, e.g., Andino v. State,* 645 S.W.2d 615, 619, 623 (Tex.App.-Austin 1983, no pet.) (noting that "perjury is not protected by a failure to comply strictly with art. 20.17 even assuming that strict compliance is necessary," but holding that "substantial and not strict compliance with art. 20.17 was all that was required in the present case").

**6.** *Jackson v. Denno,* 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (holding that a defendant is entitled to a fair determination of the voluntariness of his confession

document, and one granting his motion to suppress the "grand jury statement."

The State appealed both suppression orders, and, for the first time, argued that article 20.17 was inapplicable because Mr. Martinez was never actually subpoenaed to appear before the grand jury. The State also argued, as it had in the trial court, that it had substantially complied with article 20.17. Finally, the State again argued that any noncompliance with article 20.17 did not require the court to suppress Mr. Martinez' sworn statement in a perjury prosecution.

The court of appeals found that the State had waived its argument that article 20.17 was inapplicable because it failed to raise that argument in the trial court.[7] The court of appeals next agreed with the trial court that article 20.17 had not been

substantially complied with, because "Article 20.17(c) requires that the warnings must be given orally" and "the State concedes that there were no oral warnings."[8] Turning to the question of exclusion, the court held that the State's concession, that it failed to inform Mr. Martinez that he was a suspect before he gave testimony to the grand jury, warranted suppression under article 38.23 because the State essentially "obtain[ed] evidence through illegal means."[9]

## II.

■■■ Both Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are "judge-protecting" rules of error preservation. The basic principle of both rules is that of "party responsibility."[10] Thus, the party complaining on ap-

outside the presence of the jury). The court of appeals did not address the grant of this second motion in its opinion. *See Martinez,* slip op. at 11, n. 4.

7. *Martinez,* slip op. at 7 (finding waiver under *State v. Mercado,* 972 S.W.2d 75, 77 (Tex. Crim.App.1998)).

8. *Martinez,* slip op. at 9.

9. *See* Tex.Code Crim. Proc. art. 20.17(a). The court of appeals focused on the State's failure to tell Mr. Martinez that he was a suspect as the legal *violation requiring suppression,* rather than the State's failure to orally warn Mr. Martinez as purportedly required by section (c). In fact, the statute states that the article 20.17(a) warnings apply when a person physically appears before the grand jury as set out in section (c). Article 20.17(c) states:

> If an accused or suspect is subpoenaed to appear before a grand jury prior to any questions before the grand jury, the person accused or suspected shall be orally warned as follows . . .

The explicit statutory prerequisites to any oral warnings are: 1) that a person is subpoenaed to appear before the grand jury; 2) that person is a suspect or accused; 3) that person does appear before the grand jury; 4) before

the person may be asked any questions in the grand jury room, he must be given certain warnings. Because appellant was never subpoenaed to the grand jury and did not appear before that body, the necessity to give oral warnings never arose.

10. Rule 33.1(a) of the Texas Rules of Appellate Procedure reads:

As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

peal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence "must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question."[11]  As this Court has stated:

> We have previously recognized two general policies for requiring specific objections. "First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony." Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite.[12]

■   And so it is that appellate courts may *uphold* a trial court's ruling on any legal theory or basis applicable to the case, but usually may not *reverse* a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised. As this Court stated in *State v. Mercado*,[13] under Rule 33.1, the issue is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally "correct" in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal.[14] This "raise it or waive it" forfeiture rule applies equally to goose and gander, State and defendant.

■   The State forthrightly acknowledges that it never brought the inapplicability of Article 20.17 to the trial court's attention. On appeal, the State seeks to surmount this obstacle by advancing a rather circular argument; the State essentially argues that it did not have to tell the

---

Likewise, Texas Rule of Evidence 103 provides, in part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected," and "[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."

**11.**  1 STEPHEN GOODE, ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 103.2, at 14 (2d ed.1993).

**12.**  *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim.App.2002) (footnote omitted). As Judge Campbell has explained:

> There are many rationales for this raise-or-waive rule: that it is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to the trial court; that fairness to all parties requires a litigant to advance his complaints at a time when there is an opportunity to respond to them or cure them; that reversing for error not raised in the trial court permits the losing party to second-guess its tactical decisions after they do not produce the desired result; and that there is something unseemly about telling a trial court it erred when it was never presented with the opportunity to be right. The principle rationale for the rule, however, is judicial economy. If the losing side can obtain a reversal on a point not argued in the trial court, the parties and the public are put to the expense of a retrial that could have been avoided by better lawyering. Furthermore, if the issue had been timely raised in the trial court, it could have been resolved there, and the parties and the public would have been spared the expense of an appeal. *Young v. State*, 826 S.W.2d 141, 149 (Tex. Crim.App.1991) (Campbell, J., dissenting).

**13.**  972 S.W.2d 75 (Tex.Crim.App.1998).

**14.**  *Id.* at 78.

trial judge that Article 20.17 was inapplicable to the defendant's written statement because that article is inapplicable. The record reveals, however, that the issue squarely before the trial judge concerned the content, scope, and applicability of article 20.17, and the content, scope, and applicability of the article 38.22 confession statute. In the trial court, the State articulately argued that the confession statute was inapplicable because Mr. Martinez was never in custody. Any and every legal or factual theory that the State wished to present about article 20.17 was likewise open for consideration by the trial judge, including its inapplicability. It simply .cannot be said that the trial court could not or would not have considered the possible inapplicability of article 20.17, had that argument been brought to its attention. Nor can it be said that article 20.17 was so clearly inapplicable that this fact was obvious to all in the courtroom,[15] and the State does not contend otherwise.

The "raise-it-or-waive-it" forfeiture rule applies here. We agree with the court of appeals that the State may not argue for the first time on appeal that article 20.17 did not apply to Mr. Martinez' statement and that, therefore, the trial court abused its discretion in suppressing the statement.

The trial court cannot be held to have abused its discretion merely by ruling on the only theories of law presented to it.

Therefore, we reject the State's first two grounds for review. But that does not end our consideration, because the State did argue, in the trial court, that any noncompliance with article 20.17 in the taking of a written "Sworn Statement to the Grand Jury" does not protect or immunize allegedly perjurious statements within that document.

### III.

We turn to the State's third ground for review: Is a person who allegedly commits perjury in making a statement to the grand jury entitled to suppress that sworn statement because he was not fully advised of his rights to remain silent and make no statement at all? No. A person does not have a license to lie because the constable failed to inform him of his right to remain silent.

In a 1903 case, *Twiggs v. State*,[16] this Court overturned a perjury conviction—based on the defendant's false testimony to a grand jury—because the defendant had not been warned of his right to remain silent as required by statute. We stated that "where he is under arrest or con-

---

15. *See* Tex.R.App. Proc. 33.1(a)(1)(A) (excusing the failure to make a specific objection when the specific grounds "were apparent from the context"). In any event, the court of appeals addressed the issue on the merits and found that article 20.17 did apply to Mr. Martinez' written statement:

> We note at the outset that while Deputy Chief Martinez was never subpoenaed to appear before the grand jury, he was told by Lieutenant Norman that they were "trying to save him a trip to the grand jury" and if Deputy Chief Martinez did not want to sign the statement, they would have to summon him before the grand jury. Further, the evidence shows that the officers were purportedly conducting their investigation pursuant to the direction of the

> grand jury, that the statement itself is captioned "STATEMENT TO THE GRAND JURY," that the statement recites that Deputy Chief Martinez was "giving this Grand Jury Testimony," and finally, that Ranger Collins took the statement under the direction of the grand jury. Given the above, we find that the procurement of the statement in question was tantamount to an actual appearance before the grand jury, and thus, Article 20.17(c) is applicable in the instant case. TEX. CODE CRIM. PROC. ANN. art. 20.17(c) (Vernon Supp. 2001).

> *Martinez*, slip op. at 8.

16. 75 S.W. 531 (Tex.Crim.App.1903).

straint, or held as a witness, and testifies about an offense of which he is suspected, his statements in regard to such matters cannot be used against him, unless warned." [17] That case, were it still good law, would support Mr. Martinez' position, and that taken by the court of appeals. Under the *Twiggs* reasoning, article 38.23 would require the exclusion of Mr. Martinez's statement if it were obtained in violation of article 20.17. But in *Butterfield v. State*,[18] we noted that *Twiggs* was no longer good law; it had "essentially been overruled by the Supreme Court" [19] in *United States v. Wong*, in which that Court held that "the Fifth Amendment does not condone perjury." [20]

In *Wong*, the Supreme Court addressed, as a constitutional question, the analogous issue that is before us today as a statutory question. In that case, the defendant, who was suspected of involvement in illegal gambling, was actually called to the grand jury.[21] She was given grand jury and *Miranda* warnings, then lied under oath to the grand jury, and was later indicted for perjury. Like Mr. Martinez, she attempted to suppress her grand jury statement. She said that she did not speak English well enough to understand her Fifth Amendment rights or the warnings she had been given.[22] The Supreme Court accepted the defendant's proposition that she was, in effect, never warned of her legal rights.[23] She claimed that her grand jury testimony, "even if knowingly false, [was] inadmissible against her as having been obtained in violation of the constitutional privilege" against self-incrimination.[24] She also argued that, absent those constitutional warnings, "a witness is placed in the dilemma of engaging in either self-incrimination or perjury, a situa-

**17.** *Id.* at 532.

**18.** 992 S.W.2d 448 (Tex.Crim.App.1999)(holding that defendant's false statements, although judicially compelled in violation of his Fifth Amendment rights, were admissible in his perjury trial).

**19.** *Id.* at 451.

**20.** 431 U.S. 174, 178, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977). This principle—that the State's misconduct is not a license to commit perjury—has its roots in earlier Supreme Court cases. In *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the Court held that the defendant's direct testimony, that he had never possessed any narcotics, opened the door, solely for the purpose of attacking his credibility, to admission of the heroin unlawfully seized in connection with the earlier proceeding:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

> Such an extension of the *Weeks* [v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) ] doctrine would be a perversion of the Fourth Amendment.

Likewise, in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court held that a statement taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be used to impeach a defendant's credibility. Rejecting the contention that such impeachment violates the Fifth Amendment, the Court said: "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.... Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." 401 U.S. at 225–26, 91 S.Ct. 643.

**21.** 431 U.S. at 175, 97 S.Ct. 1823.

**22.** *Id.* at 176, 97 S.Ct. 1823.

**23.** *Id.* at 177, 97 S.Ct. 1823.

**24.** *Id.*

tion so inherently unfair as to require suppression of perjured testimony."[25]

A unanimous Supreme Court rejected these contentions because the Fifth Amendment privilege "does not condone perjury."[26] Quite simply, perjury is "not a permissible alternative" when state officials fail to give a grand jury target appropriate constitutional warnings against self-incrimination.[27] If the failure to provide constitutionally-based warnings to a grand jury target does not result in the suppression of a perjurious statement, it is difficult to imagine how or why the failure to provide oral, as well as written, statutory warnings would or should result in the suppression of perjury. Nevertheless, in

*Butterfield,* this Court did not decide whether its holding, that a perjurious statement cannot be suppressed because of the violation of a person's Fifth Amendment rights, might be different under an article 38.23 statutory analysis.[28] But long before *Butterfield,* this Court held that a defendant may not excuse or immunize any alleged perjury because the questioning was improper under article 20.17. In *Yarbrough v. State,*[29] this Court quoted the United States Supreme Court:

> [Our] cases have consistently—indeed without exception—allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Govern-

---

**25.** *Id.*

**26.** *Id.* at 178, 97 S.Ct. 1823; *see also United States v. Apfelbaum,* 445 U.S. 115, 127, 100 S.Ct. 948, 63 L.Ed.2d 250 (1979) (Fifth Amendment privilege against compulsory self-incrimination provides no protection to the commission of perjury and "does not endow the person who testifies with a license to commit perjury"); *United States v. Mandujano,* 425 U.S. 564, 582, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (a "witness sworn to tell the truth before a duly constituted grand jury will not be heard to call for suppression of false statements made to that jury"); *United States v. Weiss,* 752 F.2d 777, 786 (2d Cir. 1985) ("[i]t is now well settled that a witness before a grand jury may not dismiss an indictment for perjury because he was the target of an investigation, ... or because he was not advised of his *Miranda* rights, ... or because no effective warning of the Fifth Amendment privilege to remain silent was given"); *United States v. Pommerening,* 500 F.2d 92, 99–100 (10th Cir.1974) (although police had illegally taken defendants' documents and given them to grand jury, and defendants were not given *Miranda* warnings before testifying at grand jury, their allegedly perjurious statements to the grand jury were not subject to suppression because of official illegality; noting that "[t]he law is well settled, however, that even if appellants were entitled to a *Miranda* warning, failure to give the warning does not entitle them to commit perjury" before the grand

jury); *Cargill v. United States,* 381 F.2d 849, 853 (10th Cir.1967) (failure to give grand jury warnings to target, an experienced attorney, was not a basis for suppressing his perjurious grand jury testimony); *United States v. Winter,* 348 F.2d 204, 208–09 (2d Cir.1965) ("[i]t is one thing to say that testimony compelled from a grand jury witness who has been denied his right to counsel may not be used to secure his indictment or conviction either for the crimes being investigated or for those revealed during the course of his testimony.... It is an entirely different proposition, however, to say that such a witness may with absolute impunity proceed to perjure himself in the hope of avoiding the return of a True Bill. Such a rule would degrade the oath and have the effect of conferring permanent immunity on the perjurer").

**27.** *Wong,* 431 U.S. at 179–80, 97 S.Ct. 1823.

**28.** *Butterfield,* 992 S.W.2d at 452 (noting that "the application of Article 38.23 ... is not before us in this case.... Thus we do not decide whether the outcome would be the same under a statutory analysis"). In his dissent in *Butterfield,* however, Judge Meyers argued that the State failed to appeal the article 38.23 issue, "the only basis on which the Court of Appeals' held the evidence was suppressible." *Id.* at 455 (Meyers, J., dissenting).

**29.** 617 S.W.2d 221 (Tex.Crim.App.1981).

ment exceeded its constitutional powers in making the inquiry.[30]

Thus, "[o]nce the appellant chose to answer the questions presented, he was not at liberty to answer them falsely. Perjury is not a permissible way to object to the State's questions."[31]

Although the court of appeals cited to *Yarbrough* for the proposition "that it is clear that when a witness chooses to answer questions presented by the grand jury, even if those questions are propounded in violation of Article 20.17, the witness is not at liberty to lie," it nonetheless held that suppression of Mr. Martinez' written statement was proper under article 38.23.[32] That holding is incorrect.

■■■ Consistent with *Yarbrough* and *Butterfield,* as well as with a plethora of federal cases, we hold that, even if grand jury statements are taken in violation of Article 20.17, the witness is not at liberty to lie under oath. A state official's noncompliance with statutory requirements does not confer a privilege to commit perjury.

■■■ In this case, Mr. Martinez' sworn statement is the alleged crime itself; it is the corpus delicti of perjury. As Professor Wigmore stated, "the perjured utterance is not 'evidence' or 'testimony' to a crime but *is* the very act of crime itself."[33] The corpus delicti of the crime of perjury is not merely "evidence" of some pre-existing crime which might be subject to suppression under art. 38.23. A state official's failure to implement or abide by certain statutory requirements does not accord protection to the person who *thereafter* lies under oath.

Appellee's argument, carried to its extreme logical conclusion, would provide legal protection to the murderer of a police officer, who proves that the officer detained him without articulable suspicion prior to ˙ the murder. Under appellee's theory, evidence of that killing would have to be suppressed under article 38.23 because the murder occurred after and because of the officer's initial "illegal" conduct. That theory is not the law.

In *State v. Mayorga,*[34] four members of this Court recognized that article 38.23 deals with exclusion of illegally obtained evidence of a *prior* crime. It does not provide any protection to commit a *new* crime, like that of perjury in a sworn statement to the grand jury, and then to exclude any evidence of that new crime because the constable violated the law first.[35]

**30.** *Id.* at 226.

**31.** *Id.; see also* 2 George Dix & Robert Dawson, Criminal Practice and Procedure § 18.74, at 446 (Tex.Prac. ed.2001) (noting that, under both pre- and post–1989 amendments to art. 20.17, "exclusion was not necessary if the prosecution was for perjury committ[ed] by the responses to the improperly asked questions").

**32.** *Martinez,* slip op. at 11.

**33.** 8 John Wigmore, Evidence § 2282 (McNaughton rev.1961).

**34.** 901 S.W.2d 943 (Tex.Crim.App.1995). *Mayorga* is not binding precedent upon this Court because it was a 4–4–0 decision with

one judge, now-Presiding Judge Keller, not participating. The holding of *Mayorga* therefore, is the most narrow under Judge Baird's concurring note ("Baird, J., joins only the final paragraph of this opinion believing the remainder to be dicta") (joined by Meyers, J.). Nonetheless, to the extent that the reasoning, albeit *dicta,* expressed in *Mayorga* may be relevant to the reasoning set out in other cases, it may be cited for that reasoning, despite its nonbinding character.

**35.** *Id.* at 945–46 (stating that, in resisting arrest prosecution, evidence of defendant's conduct of resisting arrest was not subject to suppression under art. 38.23 merely because her initial arrest was illegal). As this Court stated:

The Supreme Court, in *Murphy v. Waterfront Comm'n,*[36] stated that not even the "cruel trilemma" of self-accusation, perjury, or contempt permits the person who might be unconstitutionally compelled to speak to speak falsely.[37] No matter how cruel the dilemma or trilemma, the commission of the crime of perjury is not an acceptable response.

We therefore reverse the court of appeals and remand the case to that court for proceedings consistent with this opinion.

MEYERS, J., concurred in the result.

---

"[O]btained in violation of the law" under art. 38.23 contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously committed crime.

Thus, the officers must act illegally in obtaining existing evidence of an offense. *Id.* This Court then quoted the lower court opinion, which had explained the rationale for the rule that article 38.23 excludes only illegally obtained evidence of a *prior* crime, rather than evidence of a *new* crime committed after the unlawful state official conduct.

Unlike prior criminal acts to which a defendant confesses or evidence already in existence but found pursuant to a consent to search, evidence that a defendant resisted arrest does not exist before the illegal arrest because the crime of resisting arrest has not yet been committed. In fact, when a defendant submits to the arrest as the public policy and the law of this state require, there will be no such evidence. In contrast, when a defendant does resist at the time and place of arrest, the evidence of resistance comes into existence contemporaneously with the officer's attempt to arrest him. Because the evidence does not exist prior to the illegal arrest and may never exist, the police cannot suspect its existence and arrest a defendant for the purpose of gaining the evidence. The police correspondingly cannot foresee getting the evidence as a consequence of their actions; their decision to arrest cannot be motivated by the possible acquisition and use of the evidence. Absent other facts inculpating the police conduct, the evidence of resisting arrest simply does not come into existence at a time and place or under circumstances to be within the field of exploitation.

*Id.* at 946 (quoting *State v. Mayorga,* 876 S.W.2d 176, 178 (Tex.App.-Dallas 1994)); *see also Chavez v. State,* 9 S.W.3d 817, 820 (Tex. Crim.App.2000) (Keller, P.J., concurring) (noting that art. 38.23 refers to the exclusion of evidence which existed "before the action that consists of 'obtaining'" it by a state official, thus "evidence is not 'obtained' in violation of the law when illegal activity creates the evidence"); *Cooper v. State,* 956 S.W.2d 95, 97–98 (Tex.App.-Tyler 1997, pet. ref'd) (holding that the alleged illegality of defendant's arrest could not serve, under art. 38.23, as a means to exclude evidence that he thereafter committed aggravated assault on arresting officers; "[t]he evidence of the aggravated assault was not 'obtained in violation of the law'").

36. 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

37. *See United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)(immunized grand jury testimony may be introduced in a subsequent prosecution for perjury to prove that the witness lied before the grand jury in other testimony given at the same time); *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911) (Subdivision 9 of § 7 of the Bankruptcy Act of 1898 and the immunity afforded by it are not applicable to a prosecution for perjury committed by the bankrupt, when examined under it; otherwise the immunity clause would be a mere license to commit perjury).