Opinion issued March 22, 2007 










 










In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00542-CR

____________


DAVID CARL WORMINGTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1005810






MEMORANDUM OPINION

 A jury found appellant, David Carl Wormington, guilty of the offense of
solicitation of capital murder (1) and assessed his punishment at confinement for
seventy-five years and a $10,000 fine. In two points of error, appellant contends that
he was "denied his constitutional right to present a defense" when the trial court erred
in excluding evidence of the number of times that the State had used, as an informant,
a fellow jail inmate and, alternatively, that the error affected his substantial rights.

 We affirm.

Factual and Procedural Background

 Appellant filed a pretrial motion to suppress evidence, requesting that "[a]ny
oral and/or written statements" of appellant be excluded "since such statements are
inadmissible pursuant to Chapter 38 of the Texas Code of Criminal Procedure." (2) At
the pretrial hearing on the motion, Gary Johnson, an investigator with the Harris
County District Attorney's Office, testified that on October 28, 2004, another
investigator in his office asked him to go interview "an informant . . . who potentially
had some information about a solicitation of capital murder." 

 Johnson interviewed M.S., an inmate at the Harris County Jail, who told
Johnson that a fellow inmate wanted to have his wife killed. Johnson gave M.S. "a
phone number and a name and a story to give to the guy," and told M.S. to have the
inmate call Johnson if he was interested. Johnson instructed M.S. not to further
proceed on the matter if the inmate was not interested. Later that evening, Johnson
received a collect telephone call at his home from the Harris County Jail. Johnson
first spoke with M.S., who told Johnson, "David wants to talk to you." M.S.
"hollered Dave," and a man came to the phone. That individual, later identified as
appellant, introduced himself as "David" and "contracted with [Johnson] to kill his
wife."

 Johnson explained that because appellant had a pending charge against him,
the permissible scope of his conversation was limited. Appellant "did all the talking,"
and Johnson did not ask appellant any questions. In order to confirm his identity,
Johnson arranged for another telephone conversation with appellant. Observing the
pay phone at the jail, a Harris County Sheriff's deputy confirmed that appellant in fact
used the phone to speak with Johnson. In their second conversation, appellant gave
Johnson instructions "on how to kill and where to kill and when to kill" his wife. 
Johnson explained that "all [Johnson] did was listen" and "didn't really elicit
anything."

 On cross-examination, Johnson testified that M.S. "is just a petty thief" and
calls Johnson "every time he goes to jail." M.S. had previously contacted Johnson
"[p]robably five or six times" with information regarding an inmate. In this case,
M.S. initially contacted Hal Kennedy, a Houston Police Department homicide
detective, who then contacted Johnson, who met with M.S. at the jail. When asked
by appellant's counsel what he told M.S. on how to "proceed with this solicitation,"
the following exchange occurred,

[Johnson]: Yeah. I told him I said, "don't approach the
subject. If he brings it up again, just tell him,
you know, you don't want any part, but you
will give him a number if he wants to talk to
the guy, he will set up the call."


[Appellant's Counsel]: Okay. Did you tell [M.S.] kind of what story
to tell him on how to come up with the
solicitation case?


[Johnson]: Actually, that was all done. [M.S.] also told
him that I was his half brother. And [M.S.] is
black. So, I hadn't--that was all done before
I got involved.


Johnson explained that M.S. was in custody for stealing "two pork chops and a bag
of chips." In exchange for his cooperation in appellant's case, M.S. was released
from jail "four or five days early." At the conclusion of the pretrial hearing, the trial
court denied appellant's motion to suppress.

 During the trial, Johnson further testified that, during their first telephone
conversation, appellant told Johnson where he lived and how he wanted his wife
killed. When Johnson asked appellant if anyone other than his wife would be at
home, appellant explained that he "wanted it to look like an accident." Appellant
initially suggested that Johnson murder his wife inside the home, but then suggested
that Johnson drown her "in an old dirty pool that hadn't been cleaned in several years
and she had been talking about cleaning it, so [Johnson] could drown her in there and
it would look cool." Appellant provided Johnson with directions to the home and
told Johnson his wife's daily schedule, instructing Johnson that he wanted his wife
killed before his daughter returned home from school, so that "she wouldn't find her
mother floating in the swimming pool." Appellant was to pay Johnson "$10,000 as
soon as [appellant] got out" of jail. Toward the end of their conversation, Johnson
asked appellant, "Are you sure this is what you want? Because you and I probably
won't talk again. And you can't pull out after this." Appellant responded, "I don't
want to pull out. Do it." (3)Erroneously Excluded Evidence

 In his first point of error, appellant argues that he was "denied his
constitutional right to present a defense" because the trial court erroneously excluded
evidence "as to the number of times M.S. had worked for Johnson as an 'inside the
jail house snitch.'" Appellant notes that, during the charge conference, he attempted
to raise the defense of entrapment. (4) However, in order to do so, appellant had to
prove that M.S. "was acting as an agent of the State." He contends that the trial
court's exclusion of the evidence prevented him from presenting his entrapment
defense and is subject to a constitutional harmless error review. See Tex. R. App. P.
44.2(a). In his second point of error, appellant asserts that, assuming that the trial
court's error did not "rise to the level of constitutional error," it was an error that
affected his substantial rights. See id. 44.2(b).

 During the trial, appellant's counsel questioned Johnson as to the number of
times that M.S. had worked for Johnson as an "inside-the-jail-house snitch." The
State objected, asserting that the evidence was not relevant. Appellant offered no
response to the objection, and the trial court sustained the objection. On appeal,
appellant contends that because he "was not allowed to introduce the number of times
M.S. had been used by the State, [a]ppellant could not prove M.S., due to his
experience, was capable of inducing, enticing or working [a]ppellant into such a
frenzy over [a]ppellant's wife's refusal to bond him out [of jail] that [a]ppellant
would not talk 'trash' when speaking to Officer Johnson on the phone."

 Error in the exclusion of evidence may not be urged unless the proponent
perfected an offer of proof or a bill of exceptions. Tex. R. Evid. 103(a)(2); Guidry
v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Absent a showing of what such
testimony would have been, or an offer of a statement concerning what the excluded
evidence would show, nothing is presented for review. Tex. R. Evid. 103(a)(2);
Guidry, 9 S.W.3d at 153. Furthermore, the record must show that the party "stated
the grounds for the ruling that [he] sought from the trial court with sufficient
specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(1);
Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). "[T]he complaining
party on appeal (whether it be the State or the defendant) about a trial court's
admission, exclusion, or suppression of evidence must, at the earliest opportunity,
have done everything necessary to bring to the judge's attention the evidence rule or
statute in question and its precise and proper application to the evidence in question." 
Martinez v. State, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002) (internal
quotations omitted). Thus, the proponent of excluded evidence must inform the trial
court why the evidence is admissible. See Reyna, 168 S.W.3d at 177.

 Here, appellant did not make an offer of proof after the trial court sustained the
State's relevancy objection. Nor did he inform the trial court that the evidence was
necessary to establish the defense of entrapment or argue that the exclusion of the
evidence violated his constitutional right to present a defense. In fact, appellant
offered no response to the State's relevancy objection, and he did not mention his
entrapment defense to the trial court until the charge conference. Although Johnson
had previously testified at the hearing on the motion to suppress that M.S. had
contacted him "[p]robably five or six times," appellant never informed the trial court
that the testimony was relevant to the defense of entrapment. Accordingly, we hold
that appellant has preserved nothing for our review.

 We overrule appellant's first and second points of error. 

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Pen. Code Ann. § 15.03 (Vernon 2003).
2. See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).
3. During Johnson's testimony, a taped recording of the October 28, 2004 conversation
with appellant was offered into evidence as State's exhibit two. Appellant objected
to the admission of the evidence, indicating to the trial court that he had the same
objection to the admission of the evidence as that made at the pretrial hearing on the
motion to suppress. The trial court overruled the objection, and the tape was admitted
into evidence and played for the jury. Thereafter, a taped recording of the October 29,
2004 conversation with appellant was also offered into evidence as State's exhibit
three. Appellant renewed his objection, the trial court overruled the objection, and the
tape was admitted into evidence and played for the jury.
4. Under Texas law, when a defendant raises the defense of entrapment at trial, he must
present a prima facie case that: (1) he engaged in the conduct charged; (2) because he
was induced to do so by a law enforcement agent; (3) who used persuasion or other
means; and (4) those means were likely to cause persons to commit the offense. Tex.
Pen. Code. Ann. § 8.06(a) (Vernon 2003); Hernandez v. State, 161 S.W.3d 491, 497
(Tex. Crim. App. 2005).