IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00216-CV

 

In
the Interest of B.N., a Child

                                                                                    

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 08-002607-CV-85

 



ABATEMENT ORDER



 








            Appellant challenges the trial court’s
determination under section 263.405(d) of the Family Code that she is not indigent. 
Because of the accelerated timetables applicable to this type of appeal and
because we have all the pertinent information needed, we review this
determination without briefs.  See In re S.T., 239 S.W.3d 452, 455-56
(Tex. App.—Waco 2007, order), disp. on merits, 263 S.W.3d 394 (Tex.
App.—Waco 2008, pet. denied).  We will abate this appeal so Appellant has an
opportunity to amend her affidavit of indigence.

            After the judgment was
signed, Appellant filed a signed but unsworn indigence “affidavit.”  Both the
Department of Family and Protective Services and the attorney ad litem for the
child objected to this document at the hearing to determine whether Appellant
is indigent and whether her appeal is frivolous.  See Tex. Fam. Code Ann. § 263.405(d)
(Vernon 2008).  Appellant did not attend this hearing, and no evidence was
presented on her behalf.  The trial court ruled that she “is not indigent,
having failed to meet the requirements of Texas Family Code § 263.405(e).”

            Section 263.405(e) requires
an appellant claiming indigence “to file an affidavit of indigency.”  Tex. Fam. Code Ann. § 263.405(e)
(Vernon 2008).  An affidavit is a written statement “signed by the party making
it, sworn to before an officer authorized to administer oaths, and officially
certified to by the officer under his seal of office.”  Tex. Gov’t Code Ann. § 312.011(1) (Vernon 2005); Ford
Motor Co. v. Leggat, 904 S.W.2d 643, 645-46 (Tex. 1995) (orig. proceeding);
Medford v. Medford, 68 S.W.3d 242, 247 (Tex. App.—Fort Worth 2002, no
pet.); see Guinn v. Bosque County, 58 S.W.3d 194, 198 (Tex. App.—Waco 2001,
writ denied).  An unsworn statement of indigence does not satisfy this definition. 
See Medford, 68 S.W.3d at 247; Guinn, 58 S.W.3d at 198-99.

            Appellant did not file an
affidavit of indigence, nor did she present any evidence to support her
indigence claim.  Thus, we cannot say that the trial judge erred by ruling that
Appellant failed to comply with section 263.405(e).  See In re A.S., 239
S.W.3d 390, 392 (Tex. App.—Beaumont 2007, no pet.).  Nevertheless, Rule of
Appellate Procedure 44.3 provides that a trial court’s order “must not” be
affirmed “for formal defects or irregularities in appellate procedure without
allowing a reasonable time to correct or amend the defects or irregularities.” 
Tex. R. App. P. 44.3.

            Following Rule 44.3, the
Supreme Court has consistently reversed cases which have been dismissed for
failure to pay a filing fee where the appellants had attempted to establish
indigence but had filed a defective or untimely affidavit of indigence.  See,
e.g., Higgins v. Randall County Sheriff’s Office, 257 S.W.3d 684, 688-89 (Tex. 2008); Hood v. Wal-Mart Stores, Inc., 216 S.W.3d 829, 830 (Tex. 2007) (per
curiam); In re J.W., 52 S.W.3d 730, 733 (Tex. 2001) (per curiam).  These
decisions “reflect[ ] the policy embodied in our appellate rules that disfavors
disposing of appeals based upon harmless procedural defects.”  Higgins,
257 S.W.3d at 688 (quoting Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997)).

            In J.W., the
appellants filed indigence affidavits for appeal after their parental rights
were terminated, but their affidavits omitted some of the information required
by Rule 20.1(b).  See J.W., 52 S.W.3d at 731; see also Tex. R. App. P. 20.1(b).  The district
clerk filed a contest on the ground that the affidavits were defective.  Id.  The trial court sustained the contest and denied the appellants’ motion to
amend.  Id.  The court of appeals affirmed the indigence ruling and
ultimately dismissed the appeal because the appellants failed to pay for the
appellate record.  See In re J.W., 49 S.W.3d 7, 8 (Tex. App.—Dallas 2000)
(per curiam).  The Supreme Court reversed, holding that “the court of appeals
should have directed the trial court to allow petitioners a reasonable
opportunity to amend their affidavits and to reconsider the contests based upon
any additional information.”  J.W., 52 S.W.3d at 733.

            Here, as with the appellants
in J.W. and Higgins, Appellant’s unsworn “affidavit” indicates
that she does not have adequate resources to pay the requisite costs and fees
for her appeal.  See Higgins, 257 S.W.3d at 687-88 (although some
required information was not included in his affidavit, “Higgins did clearly
attest that he had no current or expected income of any kind, and that he had
no prospects for receiving any money in the future”).  Counsel also reminded
the trial court during the indigence hearing that the court had appointed
counsel to represent Appellant at trial and asked the court “to take notice of
[the] previous indigency finding.”  However, the Department objected to this
request, and the court did not take judicial notice of the prior indigence
determination.  Nevertheless, the trial court had before it information
indicating that Appellant is indigent and concluded otherwise solely because
Appellant’s affidavit was not sworn to.  “This was contrary to Rule 44.3, and
the [trial court] should have [given Appellant] a reasonable opportunity to
amend.”  See J.W., 52 S.W.3d at 733.

            Section 263.405(d) requires
a trial court to hold a hearing on an indigence claim within thirty days after
the termination decree is signed and rule on that claim within thirty-six days
after the decree is signed.  Tex. Fam.
Code Ann. § 263.405(d).  Thus, the Fourteenth Court of Appeals has
concluded that an indigence affidavit filed after the expiration of these
deadlines cannot be considered by a court.  See In re M.A., 222 S.W.3d 670,
671 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (per curiam) (“applying Higgins
to cases involving the termination of parental rights would frustrate the
Legislature’s intent in enacting those deadlines”).

            Notwithstanding the
statutory deadlines, this Court and at least one other have abated such appeals
for a hearing in the trial court in which the appellants could develop an
evidentiary record on their ineffective assistance of counsel claims.  See
In re S.K.A., No. 10-08-00347-CV, 2009 Tex. App. LEXIS 6535, at *27 (Tex. App.—Waco Aug. 19, 2009, no pet.) (mem. op.); Doe v. Brazoria County Child
Protective Servs., 226 S.W.3d 563, 570 (Tex. App.—Houston [1st Dist.] 2007,
no pet.); In re T.N.F., 191 S.W.3d 329, 332 (Tex. App.—Waco 2006, order)
(per curiam); In re K.K., 180 S.W.3d 681, 687-88 (Tex. App.—Waco 2005,
order) (per curiam).  As the Supreme Court has observed, the Texas Legislature
“[u]nquestionably” intended section 263.405 “to yield just, fair, and
reasonable results within the legislative goal of obtaining expedited
disposition of appeals.”  In re M.N., 262 S.W.3d 799, 803 (Tex. 2008).  Thus, we apply the same rationale here as we have in the cited cases involving
ineffective assistance of counsel claims.

            We abate this appeal and
remand the cause to the trial court to allow Appellant a reasonable opportunity
to amend her indigence affidavit and to reconsider her indigence claim.  See
J.W., 52 S.W.3d at 733; see also Higgins v. Randall County Sheriff’s
Office, 193 S.W.3d 898, 900 (Tex. 2006) (per curiam).  The trial court shall
provide Appellant at least ten days after the date of this Order to amend her
affidavit and, if she does so, shall hold an indigence hearing within twenty
days after the date of this Order.  A supplemental clerk’s record and a
supplemental reporter's record pertaining to the hearing, if held, shall be
filed in this appeal within thirty days after the date of this Order.

PER CURIAM

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting)

Order issued
and filed December 9, 2009

Publish

[CV06]






:200%;page-break-after:
avoid'>      1.   b.   Cunningham

      In response to the same question,
Cunningham testified as follows on examination by the State:

      VENIREPERSON CUNNINGHAM:  I
actually used to work with the police department in Los Angeles.

      MR. BARBER:  I take it, you
were a police officer?

      VENIREPERSON CUNNINGHAM:  Yes.

      MR. BARBER:  Let me ask you
about that.  Do you feel like based on your exposure and having to do what you
did, do you feel like you could sit in a criminal case and listen to the
evidence and be fair on both guilt and innocence and/or punishment?

      VENIREPERSON CUNNINGHAM:  Probably not.

(2 R.R. 35.)  Nails does not point to any
questions that he asked Cunningham, or to any other testimony by Cunningham.

      Nails objected to Cunningham, and the
following colloquy occurred, in which Barber referred to his assistant’s notes:

      MR. ODIORNE: 
. . . .  No. 21, Mr. Cunningham, said he could not be fair in
this case.

      MR. BARBER:  Dobie’s notes
said probably not fair on guilt, so I don’t know—I don’t remember what he said
exactly but that’s what Dobie’s notes say.

      THE COURT:  Well, he seemed to leave some
room there probably in different things.  I don’t think that was clear.  I’m
going to overrule that one.

(2 R.R. 141.)

      The trial court did not clearly abuse its
discretion in finding that Cunningham was not biased to the extent of being
incapable of being fair.

      1.   c.    McClard

      As to McClard, Nails points to the
following testimony:

      MR. BARBER: 
. . . .  If you’re selected as a juror, you’ve got to decide
this case solely on the evidence that you hear and not—and whatever
instructions the Court may give you as to the law.  Do you feel like you could
sit and listen to the evidence and decide the case solely on the evidence and
be fair to both sides?

      . . . .

      . . . .  Mr.—is
it McClard?

      VENIREPERSON McCLARD: 
McClard.

      MR. BARBER:  McClard.

      VENIREPERSON McCLARD:  Yes, my
sister and her family had their car broken into during Christmas and everything
stolen and all that.  

      MR. BARBER:  Anything about
that experience that would keep you from being fair in this case?

      VENIREPERSON McCLARD:  I would
say the way things were handled.  The officers didn’t really check anything. 
He just kind of came through and said, Oh, there’s nothing we can do.

      MR. BARBER:  So you were kind
of upset with them?

      VENIREPERSON McCLARD:  A little bit.

(2 R.R. 43-44.)  Nails does not point to any questions
that he asked McClard, or to any other testimony by McClard.

      Nails objected to McClard, and the
following colloquy took place:

      MR. ODIORNE:  No. 16, Mr.
McClard said he could not be fair in this case.

      MR. BARBER:  I don’t have a
note of that, Judge.  Dobie doesn’t have a note of that.  I don’t know if he
said it or not.

      THE COURT:  I had that he said some things
that he may be impartial but was pretty vague, so I’m going to overrule the
challenge as to 16.

(2 R.R. 139-40.)

      The trial court did not clearly abuse its
discretion in finding that McClard was not biased to the extent of being
incapable of being fair.

      2.   Constitution.  In Nails’s
second issue, he argues under the Texas Constitution.  See Tex. Const. art. I, §§ 10, 19. 
Nails forfeits that argument.

      “As a prerequisite to presenting a
complaint for appellate review, the record must show that . . . the
complaint was made to the trial court . . . .”  Tex. R. App. P. 33.1(a).  “Except for
complaints involving systemic (or absolute) requirements, or rights that are
waivable only . . . all other complaints, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with Rule
33.1(a).”  Neal v. State, 150 S.W.3d 169, 175 (Tex. Crim. App. 2004)
(quoting Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004))
(ellipsis in Neal); accord Marin v. State, 851 S.W.2d 275, 277-80
(Tex. Crim. App. 1993).  Rule 33.1 is a “‘judge-protecting’ rule[] of error
preservation.”  Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005)
(quoting Martinez v. State, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002)). 
“[T]he party complaining on appeal . . . about a trial court’s
admission, exclusion, or suppression of evidence must, at the earliest
opportunity, have done everything necessary to bring to the judge’s attention
the evidence rule or statute in question and its precise and proper application
to the evidence in question.”  Id. (quoting Martinez at
335-36).  “The issue . . . ‘is . . . whether the
complaining party on appeal brought to the trial court’s attention the very
complaint that party is now making on appeal.’”  Id. (quoting Martinez at 336).  

      Nails does not indicate that he presented
his constitutional arguments to the trial court.  Accordingly, Nails forfeits
those arguments.  

      We overrule Nails’s first and second
issues.

II

      Motion
for Mistrial.  In Nails’s third issue, he contends that the trial
court erred in overruling a motion for mistrial.  “A mistrial is the trial
court’s remedy for improper conduct that is ‘so prejudicial that expenditure of
further time and expense would be wasteful and futile.’”  Hawkins v. State, 135
S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999)).  

      Nails complains concerning the following italicized
argument by the State:

      Why would we put him on
probation?  He violated his parole, folks.  Why would we put him back on
probation?  What message would it send to him if you gave him probation?  He’s
been through the system.  Remember, [one witness] told you they learn how to
manipulate the system.  What message are you going to send to him if he can
continue to get worse and worse and commit a violent crime and then you
send a message to him, We’re going to let you back on the street?

      That’s going to send a bad message.  It’s
going to cause that antisocial trait, I believe, to be reenacted again because
nothing’s going to happen to him.

(5 R.R. 88.)[1]  Thereafter, the following colloquy occurred:

      MR. ODIORNE:  Your Honor, I
think that’s an improper speculation.  There’s no evidence for that foundation.

      THE COURT:  Sustained.

      MR. ODIORNE:  Ask that the
jury be instructed to disregard the remark of counsel.

      THE COURT:  Jury is instructed
to disregard the last statement.

      MR. ODIORNE:  And respectfully
move for a mistrial.

      THE COURT:  Denied.

(5 R.R. 88.)

      “Proper jury argument includes four areas:
(1) summation of the evidence presented at trial, (2) reasonable
deduction drawn from that evidence, (3) answer to the opposing counsel’s
argument, or (4) a plea for law enforcement.”  Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000); accord Alejandro v. State, 493
S.W.2d 230, 231-32 (Tex. Crim. App. 1973).  We assume without deciding that the
argument was improper.  See Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998).

      “[Wh]ere[] the trial court sustain[s] the
defense objection and grant[s] the requested instruction to disregard,” “[t]he
only adverse ruling—and thus the only occasion for making a mistake—[i]s the
trial court’s denial of the motion for mistrial.”  Hawkins, 135 S.W.3d
at 76, 76-77.  “Under those circumstances, the proper issue is whether the
refusal to grant the mistrial was an abuse of discretion.”  Id. at
77.  “An appellate court reviewing a trial court’s ruling on a motion for
mistrial must utilize an abuse of discretion standard of review
. . . .”  Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004); see Russeau, 171 S.W.3d at 885.  We “must uphold the trial
court’s ruling if that ruling was within the zone of reasonable disagreement.” 
Wead at 129; see Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim.
App.), cert. denied, 126 S. Ct. 481 (2005); Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  “Only in extreme
circumstances, where the prejudice is incurable, will a mistrial be required.” 
Hawkins at 77.  “On appeal, we generally presume the jury follows the
trial court’s instructions in the manner presented.”  Thrift v. State, 176
S.W.3d 221, 224 (Tex. Crim. App. 2005); see id. n.10; accord Dinkins
v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995).

      In evaluating whether the trial court
abused its discretion in overruling a motion for mistrial in the punishment
phase of trial, “[w]e balance three factors: (1) the severity of the
misconduct (prejudicial effect), (2) curative measures, and (3) the
certainty of the punishment assessed absent the misconduct (likelihood of the
same punishment being assessed).”  Hawkins, 135 S.W.3d at 77.  

      Nails contends, “The nature of the error
was such that an instruction could not cure it.”  (Br. at 14 (citing Fletcher
v. State, 852 S.W.2d 271, 275 (Tex. App.—Dallas 1993, pet. ref’d)).)  

      The severity of the misconduct, assuming
that the argument was improper, was not great.  The State’s argument that
probation was not an effective deterrent for Nails, who had violated his parole
after having been previously sentenced to imprisonment, arguably constituted a
plea for law enforcement and a reasonable deduction from the evidence.  As to
curative measures, the trial court’s instruction was unexceptional.  As to the
certainty of the punishment assessed, Nails concedes that the punishment was
“on the lower side of the statutory range of punishment.”  (Br. at 15.)  The jury assessed Nails’s punishment at 14 years’ imprisonment and a fine of $1000 in
the count of aggravated robbery, a first-degree felony in which the range of
punishment was imprisonment for from 5 to 99 years or for life and a fine of up
to $10,000.  See Tex. Penal Code
Ann. §§ 12.32, 29.03(b) (Vernon 2003).  The jury assessed Nails’s
punishment at 2 years’ imprisonment and no fine in the count of burglary of a
habitation with intent to commit theft, a second-degree felony in which the
range of punishment was imprisonment for from 2 to 20 years and a fine of up to
$10,000.  See id.  §§ 12.33, 30.02(c)(2) (Vernon 2003).  The jury
assessed Nails’s punishment at 2 years’ imprisonment and no fine in the count
of state-jail-felony theft, in which the range of punishment was imprisonment
for from 180 days to 2 years and a fine of up to $10,000.  See id.
§ 12.35(a)-(b) (Vernon 2003), § 31.03(e)(4)(A).  Nails pleaded guilty
to the home-invasion burglary and aggravated robbery of an elderly woman,
including striking her in the face with a metal can.  Nails’s criminal history
included several juvenile adjudications, including commitment to the Texas
Youth Commission.  Nails’s punishment was not likely to have been substantially
less absent the State’s argument.  Accordingly, the trial court did not abuse
its discretion in overruling Nails’s motion for mistrial.  We overrule Nails’s
third issue.

III

      CONCLUSION.  Having
overruled Nails’s issues, we affirm.

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

      (Justice
Vance concurs in the judgment with a note)*

Affirmed

Opinion
delivered and filed July 26, 2006

Do
not publish

[CR25]

*(Note by Justice Vance: “I do not join the
majority opinion for several reasons.  First, we have recently written
extensive, published opinions on the review of the failure to grant a
mistrial.  See Perez v. State, 187 S.W.3d 110, 112-15 (Tex. App.—Waco
2006, no pet. h.); Lewis v. State, 191 S.W.3d 335, 338-40 (Tex.
App.—Waco 2006, pet. filed).  We should cite our own authority, when
applicable.  Second, I would not rely on Henson v. State to set the
standard for proving bias.  Third, the opinion summarily decides that a
constitutional issue was not preserved, without even identifying the provision
relied on by Nails.”)









[1]  The
State argues that Nails forfeited his complaint concerning the first argument
concerning which Nails complains by not objecting timely.  See Tex. R. App. P.  33.1(a); Aguilar v.
State, 26 S.W.3d 901, 904-905 (Tex. Crim. App. 2000).  We assume without
deciding that Nails preserved his complaint.