NO. 07-08-0129-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A 

JANUARY 21, 2009

______________________________


ANDREW RUSSELL GOODRUM, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 10,060; HON. TOM NEELY, PRESIDING

_______________________________

Before CAMPBELL, HANCOCK and PIRTLE, JJ. 
MEMORANDUM OPINION
          Appellant, Andrew Russell Goodrum, was granted an out of time appeal by the
Texas Court of Criminal Appeals to appeal his conviction for the offense of delivery of a
controlled substance, methamphetamine, in an amount of one gram or more but less than
four grams and subsequent sentence of confinement in the Institutional Division of the
Texas Department of Criminal Justice for a period of five years. Through two issues
appellant contends that 1) he was denied effective assistance of counsel and 2) that the
State’s attorney engaged in improper jury argument. We disagree and will affirm the trial
court’s judgment.
Factual and Procedural Background
          On October 16, 2000, appellant and Justin Walburg went to the home of Vicki Finch
in Vernon, Texas. Finch had been working as a confidential informant for the Department
of Public Service (DPS) since June of 2000. Upon arriving at Finch’s residence, appellant
and his companion were introduced to Randy Alsup and James Blake, both of whom were
DPS narcotics officers. After a short time, Alsup and appellant went into a bedroom where
they reached an agreement for Alsup to purchase methamphetamine from appellant. 
Appellant then left the residence to obtain the drugs and returned about 10 minutes later. 
Alsup and appellant again went into the bedroom and completed the transfer of the drugs. 
The State prosecuted the case as a straight hand to hand drug delivery. Throughout trial
appellant contended that the delivery was as a result of entrapment by the State.
          Appellant testified he obtained the drugs involved from Finch and that he was
requested to make the delivery by Finch. Further, appellant stated that had she not
pressured him into the actual delivery, he would not have been involved. Appellant
admitted that he did, in fact, deliver the drugs to Alsup.
          At the conclusion of the testimony on the issue of guilt or innocence, the trial court
instructed the jury on the issue of entrapment. Both sides argued the issue in final
arguments. By its verdict of guilty, the jury rejected the defense of entrapment.
          After the jury returned a verdict of guilty, the State introduced two prior convictions
of appellant. One for possession of a prohibited weapon and the other for unauthorized
use of a motor vehicle. After considering the evidence, the jury sentenced appellant to five
years confinement.
          It is from this conviction and sentence that appellant appeals. Appellant asserts he
was denied a fair trial due to ineffective assistance of counsel and because of improper
jury argument by the State. We disagree for the reasons set forth below.
Ineffective Assistance of Counsel
          `When confronted with an ineffective assistance of counsel claim, we apply the
two-pronged analysis set forth by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v.
State, 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting Strickland as applicable standard
under Texas Constitution).
          Under the first prong of the Strickland test, an appellant must show that counsel's
performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that
counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." Id. To be successful in this regard,
an appellant "must show that counsel's representation fell below an objective standard of
reasonableness." Id. at 688. Under the second prong, an appellant must show that the
deficient performance prejudiced the defense. Id. at 687. The appropriate standard for
judging prejudice requires an appellant to "show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. at 694. Appellant must prove both prongs of Strickland by a preponderance
of the evidence in order to prevail. Tong v. State, 25 S.W.3d 707, 712 (Tex.Crim.App.
2000); McFarland v. State, 845 S.W.2d 824, 842 (Tex.Crim.App.1992).
          Appellant alleges that his counsel was ineffective because trial counsel relied upon
a non-existent defense, which appellant states was a “crazy” defense, instead of urging a
defense recognized under Texas law. According to appellant’s contention, his trial counsel
should have placed more reliance on an entrapment defense. Further, appellant alleges
that his counsel did not understand the burden of proof in asserting an entrapment
defense.
          Simply speaking, the record totally belies the allegations of appellant. From the
beginning of voir dire and opening statements, appellant’s trial counsel emphasized that
his client was entrapped into committing this offense. The record is replete with
statements by counsel to that effect. Further, a review of the questioning of the State’s
witnesses demonstrate that appellant was relying on entrapment. During the defense’s
portion of the evidence at the guilt/innocence stage, appellant’s trial counsel placed Finch
on the witness stand and spent several hours examining the witness on the various
elements of an entrapment defense. At the conclusion of the evidence, the trial court gave
a legally correct entrapment charge. In the final analysis we can find no support for
appellant’s allegation that his trial counsel raised some sort of “crazy” non-existent defense
and failed to properly raise the entrapment defense. Accordingly, we find that appellant
has failed to demonstrate that trial counsel’s performance was deficient. Strickland, 466
U.S. at 687. Therefore, appellant’s first issue is overruled.
Improper Jury Argument
          Appellant next contends that the State improperly argued but fails to point out where
in the record the alleged improper argument occurred. Appellant generally alludes to
alleged argument about the drugs in question possibly being ultimately consumed by a
juror’s children or grandchildren. At the outset, we can find no objection to any argument
that might be the basis of appellant’s complaint. It is axiomatic that in order to complain
about a matter on appeal, an appellant must object at the time the issue arises at trial. See
Tex. R. App. P. 33.1(a)(1). If the objection is not preserved for appeal, it is waived and
nothing is preserved for appeal. Martinez v. State, 91 S.W.3d 331, 336 (Tex.Crim.App.
2002). Accordingly, appellant waived any issue regarding the State’s argument and the
issue is overruled.
Conclusion
          Having overruled appellants’s issues, the trial court’s judgment is affirmed. 




Mackey K. Hancock

Justice



Do not publish.



ary managing conservator,
TDPRS was named permanent managing conservator. At the time of the hearing in
January of 2001, TDPRS had been the temporary or permanent managing conservator for
at least six months, meeting the requirements of the first element. Element two requires
that the department make reasonable efforts to return the children. From February 17,
1999 until October 22,1999, the first case worker for TDPRS attempted to return the
children by creating a service plan which detailed the requirements that Margaret should
complete in order to have her children returned. Margaret was given seven copies of the
plan, each with an oral explanation. The case workers testified that TDPRS had made
more than sufficient efforts to return the children and that Margaret made no effort to have
the children returned. Margaret never completed the service plan even after she was
informed that the services were scheduled and paid for and all she had to do was keep the
appointments. Included in the service plan was an assessment to be completed by Leta
Acker. Acker contacted the case worker for TDPRS and stated she would no longer work
with Margaret because she had missed two four-hour scheduled assessments. From this
evidence, the trial judge could have concluded that the department made reasonable
attempts to return the children as required by the second element.

 The next element of constructive abandonment is that the parent has failed to visit
or maintain regular contact with the child. Margaret was incarcerated in April 2000 and
remained in jail at the time of the hearing. We recognize this period alone is not sufficient
to establish constructive abandonment, id. at 634; however, before she was incarcerated
Margaret did not regularly visit the children. When the children were taken into custody,
Margaret was allowed weekly visits. She began to miss visits and arrive thirty to forty-five
minutes late when she did attend. TDPRS then changed the visitation schedule to every
other week. Margaret's visitation was sporadic and in December 1999, she admittedly
made her last visit four months prior to her incarceration. The only contact Margaret
claims occurred after this date is through her sister. The trial judge could have found that
Margaret did not regularly visit her children.

 The final element necessary in finding constructive abandonment is failure to
provide the child with a safe environment. In her brief, Margaret admits that she "made
error in judgment and has on isolated occasion engaged in conduct that she regrets." 
Further, soon after Margaret's children were placed with TDPRS, she was asked to
complete a Substance Abuse Felony Treatment Program as an alternative to incarceration
for probation violation, but she refused and was incarcerated. As a result of her failure to
utilize treatment, the children remained in the custody of the TDPRS while she was
incarcerated. Margaret also failed two urinalyses while she was on probation. 
Accordingly, her violation of the terms of her probation created an unsafe environment for
her children and we conclude that evidence is legally and factually sufficient to establish
that Margaret constructively abandoned her children. Margaret's fourth point of error is
overruled.

 By her second point of error, Margaret contends the evidence was legally and
factually insufficient to support a finding that termination was in the best interest of her
children. (3) Factors to be considered when making the determination as to whether
termination is in the child's best interest include: the desires of the child, the emotional and
physical needs of the child now and in the future, the emotional and physical danger to the
child now and in the future, parenting abilities, acts or omissions indicating the existing
parent-child relationship is not a proper one, and any excuse for the acts or omissions. 
In Interest of B.S.T., 977 S.W.2d 481, 485 (Tex.App.--Houston [14th Dist.] 1998, no pet.). 
Without any objection, the two case workers for TDPRS testified that in their opinion, 
termination of parental rights was in the best interest of the children and that the children
expressed desires to be adopted and live in new homes. Because evidence of a parent's
history, admissions, and conduct relating to drug abuse, and her inability to maintain a
lifestyle free from arrests and incarcerations is also relevant to a best interest
determination, see Holley, 544 S.W.2d at 370, the evidence establishing that Margaret
violated probation, refused drug treatment, and used and delivered drugs can also be used
to support the court's finding. We therefore conclude that the evidence was legally and
factually sufficient to support a finding that termination was in the best interest of the
children. Margaret's second point of error is overruled. Our disposition of points of error
two and four pretermits consideration of points one and three. Tex. R. App. P. 47.1.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.
1. Although the order also terminated the parental rights of the father, he did not
appeal.
2. Not the natural father.
3. TDPRS contends that Margaret waived this point by failing to cite to authorities to
support her proposition. However, the Supreme Court's policy is to construe the Texas
Rules of Appellate Procedure liberally so that decisions turn on substance rather than
procedural technicality. Motor Vehicle Bd. of Tex. v. EPIADA, 1 S.W.3d 108, 111 (Tex.
1999). Thus, because termination of parental rights is a right of constitutional dimension,
we will consider Margaret's contention. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).