NUMBER 13-08-00594-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


JOSE MIGUEL VASQUEZ JR., Appellant,


v.


THE STATE OF TEXAS, Appellee.

 




On appeal from the 107th District Court 


of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Garza, and Benavides

Memorandum Opinion by Justice Yañez

 A jury found appellant, Jose Miguel Vasquez Jr., guilty of murder, and the trial court
sentenced him to life imprisonment. (1) Appealing pro se, (2) appellant contends, by five issues,
that: (1) the trial court erred in admitting DNA evidence against him because the State
failed to establish the reliability of the procedures used to test the DNA evidence; (3) (2) the
State engaged in "prosecutorial misconduct" by refusing to release DNA evidence to the
defense's expert for re-testing; (3) the State's failure to release DNA evidence for re-testing
constituted a Brady violation; (4) (4) his trial counsel rendered ineffective assistance; and (5)
the reporter's record is incomplete because it fails to include some matters that appellant
"clearly recalls" from trial. We affirm. 

I. Background 


 At trial, the State presented the testimony of Ana Ayala and Andres Garcia, among
others. Ayala testified that on the evening of May 15, 2006, she was "getting high" on
crack cocaine with appellant, George Garza (the murder victim), and several others at the
home of Pablo Cortez. While at Cortez's home, Ayala heard appellant tell Garza that he
(appellant) would kill Garza in less than two hours. Shortly thereafter, Ayala, Garza, and
appellant went to Garcia's house. Garcia, in his own vehicle, drove Garza to a local park. 

Appellant and Ayala followed, with Ayala driving Garza's truck. When they arrived at the
park, appellant instructed Ayala to wait; he drove away with Garza and Garcia. A short
while later, only Garcia and appellant returned. According to Ayala, appellant was covered
in blood. Appellant showed her Garza's knife (which he had borrowed earlier in the
evening), licked the knife, and told Ayala that he had killed Garza with his own weapon. 
Ayala and appellant then drove to Garcia's house. Ayala waited in the car while appellant
removed his bloody clothing and gave it to Garcia's father. Appellant rinsed off with a hose
and put on clean clothes. Ayala and appellant then went to eat at a coffee shop. Later
that day, appellant and Ayala rented a room at a motel. They left the motel in a friend's
car to obtain some drugs. Appellant sat in the back seat behind the driver's seat. 
According to a police officer's testimony, the murder weapon was later recovered from
beneath the vehicle's cushion where appellant was seated.

 Garcia testified that appellant asked him to drive appellant and Garza into the park. 
Garcia testified that, at the park, Garza and appellant were outside the vehicle arguing. 
He saw appellant "hitting" Garza with both hands. Appellant returned to the car, leaving
Garza behind. Appellant was breathing fast and told Garcia to take him back to the truck.

II. Discussion 


 By his first issue, appellant complains that: (1) the State failed to release DNA
evidence to the defense for re-testing; and (2) the State's DNA evidence was
"inadmissible" because the State "failed to establish the general acceptance or inherent
rationality of the process" of its DNA-testing procedures, which resulted in a finding that
DNA on the murder weapon was consistent with appellant's DNA. The State responds
that: (1) testimony by the defense's DNA expert, Aliece Watts, established that the State
did, in fact, release DNA evidence to the defense for further testing; (2) Watts testified that
she generally accepted the methodology of the State's expert; and (3) the defense did not
preserve any challenge to the State's DNA-testing procedures because it did not object to
the admission of the State's DNA evidence. 

 Watts testified that, although the State did provide DNA evidence to a defense-designated laboratory for additional testing, no additional testing was done because of a
"communications breakdown." Watts also testified that appellant could not be excluded
as a contributor to the DNA that was found on the murder weapon. We disagree with
appellant's assertion that the State failed to establish the reliability of its DNA-testing
procedures. The State's DNA expert, Dr. Laura Gahn, testified that she was the laboratory
director at Identigene, the laboratory where the State's DNA testing was conducted in this
case. Dr. Gahn described the testing methods used on the evidence samples and the
reference samples in this case. As the State notes, the defense did not object at trial to
the DNA-testing procedures utilized by the State's expert. (5) Dr. Gahn testified that the
"major contributor" to the DNA found on the knife was Garza, the victim. According to Dr.
Gahn, additional DNA was found on the knife from a "lower level contributor"; this DNA is
consistent with appellant's DNA. 

 We hold that: (1) the State did release DNA evidence to the defense for re-testing;
and (2) the defense failed to preserve any challenge to the reliability of the State's DNA-testing procedures by failing to object on that basis. (6) We overrule appellant's first issue.

 By his second issue, appellant contends that the State engaged in "prosecutorial
misconduct" by failing to release DNA evidence to the defense for re-testing. As noted, the
record shows that the State did release the DNA evidence to the defense-designated
laboratory for re-testing. Accordingly, we overrule appellant's second issue. 

 By his third issue, appellant complains that the State's failure "to turn over DNA
discovery evidence to the defense constituted a Brady violation on the part of the State." (7) 
Again, the State did turn over DNA evidence to the defense for re-testing. Thus,
appellant's contention is not supported by the record, and we overrule his third issue. 

 By his fourth issue, appellant contends that his trial counsel was ineffective
because, even though the State refused to release the DNA samples for re-testing, his
counsel "abandoned attack of the DNA evidence used to convict the appellant knowing the
evidence was questionable." In sub-issues, appellant contends his counsel was ineffective
for: (1) failing to request a stay in the trial proceedings until questions regarding the DNA
evidence were resolved; and (2) failing to object to the State's suggestion that appellant
was a member of a gang and was motivated by gang activity. 

 Ineffective assistance of counsel claims are evaluated under the two-part test
articulated by the United States Supreme Court in Strickland v. Washington. (8) The
Strickland test requires the appellant to show that counsel's performance was deficient, or
in other words, that counsel's assistance fell below an objective standard of
reasonableness. (9) Assuming appellant has demonstrated deficient assistance, he must
then show that there is a reasonable probability that, but for counsel's errors, the result
would have been different. (10) In determining the validity of appellant's claim of ineffective
assistance of counsel, "any judicial review must be highly deferential to trial counsel and
avoid the deleterious effects of hindsight." (11)

 The burden is on appellant to prove ineffective assistance of counsel by a
preponderance of the evidence. (12) Appellant must overcome the strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance and that
his actions could be considered sound trial strategy. (13) A reviewing court will not
second-guess legitimate tactical decisions made by trial counsel. (14) Counsel's effectiveness
is judged by the totality of the representation, not by isolated acts or omissions. (15) 

 An allegation of ineffectiveness must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness. (16) Here, the record is silent
regarding trial counsel's reasons for failing to: (1) pursue a strategy of attacking the State's
DNA evidence; (2) request a stay in the trial proceedings until resolution of issues
regarding the DNA evidence; and (3) object to the State's suggestion that appellant
belonged to a gang and was motivated by gang activity. Appellant has not overcome the
strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance and that his actions could be considered sound trial strategy. (17) 
Furthermore, appellant does not contend with proper citation to authority and a clear and
concise argument that there is a reasonable probability that but for trial counsel's alleged
errors, the result would have been different. (18) Therefore, appellant has not met his burden
to prove ineffective assistance of counsel by a preponderance of the evidence. (19) We
overrule appellant's fourth issue. 

 By his fifth issue, appellant contends that the reporter's record is neither accurate
nor complete. Specifically, appellant contends that volumes 12 and 16 of the reporter's
record are incomplete because he recalls that his counsel advised the trial court that the
State had not released DNA samples to the defense's DNA expert. According to appellant,
this exchange is not included in the reporter's record, and the record is therefore
incomplete. 

 Volume 12 of the reporter's record comprises a transcript of a pre-trial hearing, held 
on April 10, 2008, approximately four months before trial. At the hearing, the trial court
granted defense counsel's motion for a continuance to postpone trial until after the defense
was given an opportunity to conduct its own testing of the DNA evidence. 

 Volume 16 of the reporter's record reflects a pre-trial hearing on the State's motion
for the defense to produce documents. The hearing took place on August 6, 2008, six
days before the beginning of trial. At the hearing, the State complained that it had turned
over DNA samples and other evidence, including the knife, to the defense-designated
laboratory, and the evidence had still not been returned. Moreover, the State complained
that defense counsel had not provided any documents or reports from the defense-designated laboratory regarding DNA testing. Defense counsel explained that there were
no documents or reports pertaining to DNA testing because the defense-designated
laboratory had not conducted any DNA testing. Defense counsel advised the court that
the defense-designated laboratory did not conduct any DNA testing of the evidence
because the laboratory had recently moved its headquarters to another state. 

 Appellant complains that he is "prejudiced" because the record does not reflect his
counsel's statement to the trial court that the State never released the DNA evidence to
the defense for testing. The record, however, clearly reflects that the DNA evidence was
provided to the defense for testing, but that such testing did not occur. We are
unpersuaded that the record is incomplete or inaccurate, and we overrule appellant's fifth
issue.

III. Conclusion 

 We affirm the trial court's judgment. 

 

 LINDA REYNA YAÑEZ,

 Justice

Do not publish.

Tex. R. App. P. 47.2(b).

Delivered and filed the

4th day of November, 2010.



 
1. See Tex. Penal Code Ann. § 19.02(b), (c) (Vernon 2003), § 12.32 (Vernon Supp. 2010).
2. On January 8, 2009, this Court abated this appeal and instructed the trial court to determine whether
appellant: (1) desired to prosecute his appeal; (2) had been denied effective assistance of counsel; and (3)
was indigent and entitled to court-appointed counsel. On February 12, 2009, the trial court held a hearing. 
At the hearing, appellant asserted that his trial counsel had rendered ineffective assistance and advised the
court that he wished to proceed with his appeal pro se. Appellant specifically rejected the assistance of court-appointed counsel. The trial court declined to make any finding regarding appellant's claims of ineffective
assistance because of appellant's intent to raise such issues on appeal. The trial court granted appellant's
request to proceed pro se and ordered that he be provided with a free copy of the record. 
3. In a sub-issue, appellant also complains that the State failed to release DNA samples to the
defense's DNA expert for re-testing. We note that this sub-issue is also raised in appellant's second issue. 

4. See Brady v. Maryland, 373 U.S. 83, 87 (1963). 
5. Appellant's counsel objected to the State's evidence only on the basis of "hearsay"; the objection
was overruled. The State elicited testimony from Dr. Gahn that her "statistics and analysis" were based on
"[a]ccepted scientific method" and that her laboratory had the proper accreditation and certification. 
Appellant's counsel did not object to this testimony. 
6. See Tex. R. App. P. 33.1; Tex. R. Evid. 103; Martinez v. State, 91 S.W.3d 331, 335 (Tex. Crim. App.
2002) (stating, under Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103, "the party
complaining on appeal . . . about a trial court's admission, exclusion, or suppression of evidence, 'must, at
the earliest opportunity, have done everything possible to bring to the judge's attention the evidence rule or
statute in question and its precise and proper application to the evidence in question.'"); see also Whatley v.
State, No. 13-07-568-CR, 2009 Tex. App. LEXIS 556, at **24-25 (Tex. App.-Corpus Christi Jan. 29, 2009,
pet. ref'd) (mem. op., not designated for publication) (noting that "[t]he court of criminal appeals has
'consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about
the admissibility of evidence. This is true even though the error may concern a constitutional right of the
defendant.'" (quoting Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002))).
7. See Brady, 373 U.S. at 87. 
8. See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing Strickland v.
Washington, 466 U.S. 668, 687 (1984)); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
9. Thompson, 9 S.W.3d at 812; see Strickland, 466 U.S. at 687.
10. Thompson, 9 S.W.3d at 812; see Strickland, 466 U.S. at 694.
11. Thompson, 9 S.W.3d at 813.
12. Id.
13. See Strickland, 466 U.S. at 689; Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.-Corpus Christi 
2006, no pet.).
14. State v. Morales, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient
to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court
should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct
was so outrageous that no competent attorney would have engaged in it.'").
15. Thompson, 9 S.W.3d at 813; Jaynes, 216 S.W.3d at 851.
16. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); Thompson, 9 S.W.3d at 814 (setting
out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an
appellant to satisfy the dual prongs of Strickland"); see Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court
to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of
reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial
counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial
counsel's performance was deficient.") (internal citations omitted).
17. See Strickland, 466 U.S. at 689; Jaynes, 216 S.W.3d at 851. 
18. Thompson, 9 S.W.3d at 812; see Strickland, 466 U.S. at 694; see also Tex. R. App. P. 38.1(i). 
Appellant asserts, without argument or citation to the record, only this sentence: "Trial records show the
deficient performance of appellant[']s attorney and but for counsel[']s errors[, the] probability exist[s] that the
ultimate result would have been different." 
19. Thompson, 9 S.W.3d at 813.