02-09-363-CV REHEARING









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00363-CV

 

 


 
 
 Russell Jay Reger
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Criminal District Attorney of Tarrant County, Texas
 and Detective Jerry S. Vennum # 803
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 141st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION ON REHEARING[1]

----------

 

I.  INTRODUCTION

 

After
considering Appellant’s motion for rehearing, we deny the motion but withdraw
our prior opinion and judgment of May 19, 2011, and substitute the following to
make nonsubstantive clarifications. 

Appellant
Russell Jay Reger appeals the trial court’s dismissal of his original petition
for writ of mandamus against Appellees Criminal District Attorney of Tarrant
County, Texas, and Detective Jerry S. Vennum of the Dalworthington Gardens
Department of Public Safety.  In his mandamus petition, Reger—an inmate in the
Texas Department of Criminal Justice proceeding pro se and in forma
pauperis—sought to compel the defendants to produce photographs related to
his 1996 murder trial under the Texas Public Information Act and article 2.01
of the Texas Code of Criminal Procedure.[2]  After a hearing, the
trial court granted Appellees’ motions to dismiss Reger’s suit as frivolous or
malicious under chapter 14 of the Texas Civil Practice and Remedies Code.[3] 
Reger raises three issues on appeal.  We affirm.

II.  FACTUAL
AND PROCEDURAL BACKGROUND

A.  Prior
Proceedings

A
jury convicted Reger of murder on April 12, 1996, and sentenced him to life
imprisonment, and this court affirmed the conviction on appeal.  See Reger
v. State, No. 02-96-000217-CR (Tex. App.—Fort Worth July 31, 1997, pet.
ref’d) (not designated for publication).  In 1998, Reger filed an initial
application for writ of habeas corpus under article 11.07 of the code of
criminal procedure, Tex. Code Crim. Proc. Ann. art. 11.07 (West Supp. 2010),
which the court of criminal appeals denied without a written order.  See
Ex parte Reger, No. WR-38,770-01 (Tex. Crim. App. Nov. 4, 1998).  In
2005, Reger filed a motion for DNA testing, which the trial court denied after
a hearing.  See Tex. Code Crim. Proc. Ann. art. 64.01 (West Supp. 2010). 
This court affirmed the trial court’s ruling.  See Reger v. State,
222 S.W.3d 510 (Tex. App.—Fort Worth 2007, pet. ref’d), cert. denied,
128 S. Ct. 917 (2008).

          From
2004 to 2007, Reger and his agents[4] requested, pursuant to
the Texas Public Information Act (PIA), that the Appellees produce fourteen
color photographs that Reger and his agents asserted had been taken during the
course of the criminal investigation preceding his 1996 murder trial.[5] 
In responding to the PIA requests, the District Attorney’s Office asserted that
the PIA did not require compliance because Reger was imprisoned in a
correctional facility.  See Tex. Gov’t Code Ann. '
552.028(a).  In addition, Dalworthington Gardens Department of Public Safety
(the Department) responded in 2004 and 2007, respectively, that the fourteen
photographs were no longer in its custody and that it did not know their
whereabouts.  After additional correspondence, the Department provided Reger
with twenty-four photographs of the crime scene, none of which depicted the red
Mustang.

B.  Instant
Proceedings

          In
an effort to obtain the fourteen color photographs, Reger filed an original
petition for writ of mandamus against Appellees on October 22, 2007.  In his
July 27, 2009 amended petition, Reger asked the trial court to order the
Appellees to make available the fourteen photographs and asserted that they “possess
forensic blood spatter evidence in which [Reger’s expert] . . . . can ma[k]e an
accurate expert report upon them, which will then go to prove the relator’s
guilt, or innocence.”  Reger based his petition for mandamus on article V,
section 8 of the Texas constitution, sections 24.011 and 552.028(b) of the
Texas Government Code, and article 2.01 of the Texas Code of Criminal
Procedure, and he alleged that his suit was one in equity.

          Appellees
answered and moved to dismiss Reger’s suit as frivolous or malicious under
chapter 14 of the civil practice and remedies code.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 14.003(b)(2).  Both
Appellees asserted that they had “no pictures in [their] possession” and that
they were not required to accept or comply with a request for information from
an individual imprisoned or confined in a correctional facility under PIA
section 552.028.  At an October 9, 2009 hearing, the trial court heard legal
arguments from counsel for Appellees and from Reger, who attended and
participated without counsel.  Afterward, the trial court granted the
Appellees’ motions to dismiss.

III.
 APPLICABLE LAW

A.  Chapter
14 of the Civil Practice and Remedies Code

Inmate
litigation (in which an inmate files an affidavit or unsworn declaration of
inability to pay costs) is governed by certain procedural rules set forth in
chapter 14 of the civil practice and remedies code.  See Tex. Civ. Prac.
& Rem. Code Ann. '' 14.001–.014 (West 2002); Garrett
v. Williams, 250 S.W.3d 154, 157 (Tex. App.—Fort Worth 2008, no pet.).  The
purpose of chapter 14 is to aid the trial court in determining whether an
inmate’s claim is frivolous.  Hamilton v. Pechacek, 319 S.W.3d 801, 809
(Tex. App.—Fort Worth 2010, no pet.); Garrett, 250 S.W.3d at 157.  A
trial court has broad discretion to dismiss an inmate’s suit as frivolous
because: “(1) prisoners have a strong incentive to litigate; (2) the government
bears the cost of an in forma pauperis suit; (3) sanctions are not
effective; and (4) the dismissal of unmeritorious claims accrues to the benefit
of state officials, courts, and meritorious claimants.”  Nabelek v. Dist. Att’y
of Harris Cnty., 290 S.W.3d 222, 228 (Tex. App.—Houston [14th Dist.] 2005,
pet. denied); Garrett, 250 S.W.3d at 158.  In determining whether a
claim is frivolous, the trial court may consider whether: 

(1) the claim’s
realistic chance of ultimate success is slight; (2) the claim has no arguable
basis in law or in fact; (3) it is clear that the party cannot prove facts in
support of the claim; or (4) the claim is substantially similar to a previous
claim filed by the inmate because the claim arises from the same operative
facts.  

 

Tex.
Civ. Prac. & Rem. Code Ann. '
14.003(b); see Nabelek, 290 S.W.3d at 228; Garrett, 250
S.W.3d at 158.  In this case, Appellees argued that Reger’s claim was frivolous
because it had no basis in law or fact.

B.  Standard
of Review

We
review a trial court’s dismissal of an inmate’s claim under chapter 14 for an abuse
of discretion.  Hamilton, 319 S.W.3d at 809; Garrett, 250 S.W.3d
at 158.  Because the trial court’s hearing consisted solely of legal arguments
and did not include the presentation of evidence, the issue on appeal is
whether Reger’s claims had no arguable basis in law.  Cf. Hamilton, 319
S.W.3d at 809 (holding that review focuses on whether the inmate’s lawsuit has
an arguable basis in law when no evidentiary hearing is held).

Whether
a claim has an arguable basis in law is a legal question that we review de
novo.  Hamilton, 319 S.W.3d at 809; Nabelek, 290 S.W.3d at 228. 
In conducting our de novo review, we take as true the allegations of the
inmate’s petition; that is, we review the inmate’s petition to determine
whether, as a matter of law, it stated a cause of action that would authorize
relief.  Scott v. Gallagher, 209 S.W.3d 262, 266 (Tex. App.—Houston [1st
Dist.] 2006, no pet.).  A claim has no arguable basis in law if it is an
“indisputably meritless legal theory.”  Id.  We will affirm the dismissal
if it was proper under any legal theory.  Hamilton, 319 S.W.3d at 809.

C.  Mandamus

An
action for writ of mandamus initiated in the trial court is a civil action
subject to appeal just as any other lawsuit.  Garrett, 250 S.W.3d at
158.  An original proceeding is a suit for purposes of chapter 14.  Id.;
Harrison v. Vance, 34 S.W.3d 660, 662 (Tex. App.—Dallas 2000, no pet.).

1.  Section
24.011 of the Government Code

          Section
24.011 of the government code provides that a judge of a district court may grant
writs of mandamus necessary to enforce the court’s jurisdiction.  Tex. Gov’t
Code Ann. ' 24.011; see Tex. Const. art. V, ' 8. 
A writ of mandamus will issue to compel a public official to perform a
ministerial act.  Anderson v. City of Seven Points, 806 S.W.2d 791, 793
(Tex. 1991).  A writ of mandamus initiated in the trial court issues only to
correct a clear abuse of discretion or a violation of a duty imposed by law
when there is no other adequate remedy at law.  Harris v. Jones, 8
S.W.3d 383, 385 (Tex. App.—El Paso 1999, no pet.) (citing Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1999)).  The relator must establish that, under the
circumstances of the case, the facts and the law permit the trial court to make
only one decision.  Jones, 8 S.W.3d at 385–86; Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985).

2. 
Public Information Act

          A
petition for a writ of mandamus such as Reger’s has been found to be an
appropriate mechanism to enforce the PIA.[6]  See Harrison,
34 S.W.3d at 663; Moore v. Henry, 960 S.W.2d 82, 83 (Tex. App.—Houston
[1st Dist.] 1996, no writ).  Section 552.028 of the PIA provides that a
governmental body is not required to accept or comply with a request for
information from “an individual who is imprisoned or confined in a correctional
facility” or “an agent of that individual, other than that individual’s
attorney when the attorney is requesting information that is subject to
disclosure under this chapter.”  Tex. Gov’t Code Ann. '
552.028(a)(1), (2).  Thus, a governmental body’s decision whether to provide
the requested information to an incarcerated individual or his agent is a
discretionary act.[7]  Harrison, 34
S.W.3d at 663.

IV.  ANALYSIS

          In
three issues, Reger contends that the trial court abused its discretion by (1)
ruling that article 2.01 of the code of criminal procedure created an ethical
and discretionary obligation, not a mandatory duty, on the Appellees to
disclose exculpatory evidence; (2) dismissing Reger’s writ of mandamus without
permitting him an opportunity to conduct discovery; and (3) finding that
Reger’s claim was frivolous or malicious and granting the Appellees’ motions to
dismiss.

          As
demonstrated below, the trial court could have properly dismissed Reger’s suit
as frivolous either (1) because it was an improper post-conviction vehicle to
obtain the fourteen color photographs or (2) because Reger’s mandamus petition
does not, as a matter of law, establish a cause of action that would authorize
relief.  Further, the trial court followed the dictates of chapter 14 and did
not abuse its discretion by dismissing Reger’s suit without allowing discovery.

A.  Trial
Court’s Chapter 14 Dismissal[8]

Reger
asserts that Appelless have a duty to produce the requested photographs under
article 2.01 because the legislature enacted it to be a “reciprocal discovery
statute” to Brady v. Maryland and because Brady imposes an
“absolute disclosure duty” on prosecutors and members of their team.[9]
 Article 2.01 of the code of criminal procedure, titled “Duties of district attorneys,”
provides in pertinent part that “[i]t shall be the primary duty of all
prosecuting attorneys, including any special prosecutors, not to convict, but
to see that justice is done.  They shall not suppress facts or secrete
witnesses capable of establishing the innocence of the accused.”  Tex. Code
Crim. Proc. Ann. art. 2.01.

In Brady
v. Maryland, the Court held that 

the suppression by
the prosecution of evidence favorable to an accused upon request violates due
process where the evidence is material to either guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution.

 

373
U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963).  It is settled law that a
defendant’s due process rights are violated if he does not obtain, upon request,
evidence in the State’s possession favorable to him “where the evidence is
material either to guilt or to punishment, irrespective of the good faith or
bad faith of the prosecution.”  Page v. State, 7 S.W.3d 202, 205–06
(Tex. App.—Fort Worth 1999, pet. ref’d) (citing Brady, 373 U.S. at 87,
83 S. Ct. at 1197)).  There is, however, no general right to discovery in a
criminal case, and Brady does not create one.  Weatherford v. Bursey,
429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977); Michaelwicz v. State, 186
S.W.3d 601, 612–13 (Tex. App.—Austin 2006, pet. ref’d); Page, 7 S.W.3d
at 207.  To invoke Brady and its progeny, a defendant must
present evidence that (1) the prosecution suppressed or withheld evidence; (2)
the evidence would have been favorable to the accused; and (3) this evidence
would have been material to his defense.  Michaelwicz, 186 S.W.3d at
613.

1.    Mandamus as an Improper Vehicle

The
trial court properly dismissed Reger’s suit as frivolous because Reger failed
to establish that, under the circumstances of the case, the law permitted the
trial court to make only one decision.  See Jones, 8 S.W.3d at
385–86.  Due to the distinct posture of Reger’s lawsuit, the trial court could
have properly found that it was an improper post-conviction vehicle to obtain
the fourteen color photographs due to the exclusivity of post-conviction habeas
corpus law and because Reger’s apparent purpose in seeking the photographs was
to pursue further habeas relief.[10]  See Tex. Code
Crim. Proc. Ann. art. 11.07, ' 5 (“After conviction the
procedure outlined in this Act shall be exclusive and any other proceeding
shall be void and of no force and effect in discharging the prisoner.”).

Reger
asserted in his mandamus pleadings that he requested access to the photographs
under the PIA in order to “ultimately prove his legal innocence on subsequent
habeas corpus application, pursuant to Texas Code of Criminal Procedure, art.
2.01 and 11.07, ' 4.”[11] 
He also asserted that, before he could file a subsequent habeas application
under article 11.07, section 4 of the code of criminal procedure, his expert
must first obtain and review the fourteen color photographs.[12] 
Additionally, throughout his pleadings, Reger attacks the validity of his
underlying conviction, stating for example that he is “being presently
illegally incarcerated under an uncontroverted, adoptively admitted illegal-
null and VOID judgment of conviction.”

Jurisdiction
to grant post-conviction habeas corpus relief in felony cases rests exclusively
with the court of criminal appeals.  See Tex. Code Crim. Proc. Ann. art.
11.07, § 3 (providing that post-conviction writs of habeas corpus are to be
filed in the trial court in which the conviction was obtained and made
returnable to the court of criminal appeals); Ater v. Eighth Court of
Appeals, 802 S.W.2d 241, 243 (Tex. Crim. App. 1991) (holding that
intermediate appellate court could not grant acquittal by mandamus because
“[w]e are the only court with jurisdiction in final post-conviction felony
proceedings”).  “Article 11.07 contains no role for the courts of appeals; the
only courts referred to are the convicting court and the Court of Criminal
Appeals.”  In re McAfee, 53 S.W.3d 715, 716 (Tex. App.—Houston [1st
Dist.] 2001, orig. proceeding).  Moreover, several intermediate appellate
courts have held that, even if a mandamus relator is not actually requesting
habeas relief, jurisdiction lies with the court of criminal appeals if the
purpose of the request is to pursue further habeas relief.  See Self v.
State, 122 S.W.3d 294, 294–95 (Tex. App.—Eastland 2003, no pet.) (dismissing
an appeal for want of jurisdiction where trial court denied appellant’s request
for a free copy of the trial court’s records in order to prosecute a
post-conviction writ of habeas corpus); In re Trevino, 79 S.W.3d 794,
795 (Tex. App.—Corpus Christi 2002, orig. proceeding) (holding that court of
appeals did not have jurisdiction to issue mandamus directing district court to
forward copy of transcripts and evidence to inmate for purposes of pursuing
post-conviction relief).

Notably,
in 2005, Reger filed a petition under civil procedure rule 202 (governing
depositions before suit) seeking to depose the judge who presided over his
criminal trial, and the trial court dismissed the petition for failure to comply
with certain provisions of rule 202 and chapter 14 of the civil practice and
remedies code.  See In re Reger, 193 S.W.3d 922, 923 (Tex.
App.—Amarillo 2006, pet. denied).  The Seventh Court of Appeals held that “[a]ssuming
arguendo” that the trial court erred in dismissing the
petition, the error was harmless for several reasons, including (1) that it was
“beyond dispute” that Reger sought to “depose the trial judge who presided over
his criminal trial to obtain evidence to nullify his felony conviction for
murder”; (2) that “effort to nullify a felony conviction must be undertaken via
habeas corpus instituted per art. 11.07 of the Texas Code of Criminal
Procedure”; and (3) that “an art. 11.07 habeas proceeding is not civil in
nature, but criminal.”  Id.  The court further stated that

because the
anticipated suit or claim Reger desired to initiate is criminal, as opposed to
civil in nature, the relief afforded under Rule 202 was unavailable to him.

 

In sum, criminal
matters have their own rules of discovery, such as they are.  We opt not to
enhance that body of rules by engrafting on to them Texas Rule of Civil
Procedure 202.  We leave that to the courts of last resort.

 

Id.  For
similar reasons, the trial court in the instant case could have reasonably
determined that, because it was not the convicting court, it did not have
jurisdiction over Reger’s post-conviction efforts to pursue habeas relief.

In
his mandamus pleadings, Reger essentially asserted that his mandamus suit
should not be construed as the pursuit of habeas corpus relief because he made
it very clear to the trial court that “success in this action will not
‘necessarily demonstrate the invalidity of confinement or its duration.’”[13] 
Reger also argued, however, that he had “made a prima facie showing to [the
trial court] that his underlying conviction: (1) is NOT final due to being
illegal- null and VOID; and (2) that the results are NOT reliable, fair, or
just.”  In addition to the circular nature of his reasoning, Reger does not
refute that the purpose of requesting access to the fourteen photographs is to
pursue further habeas relief.

          For
these reasons, the trial court could have properly found that Reger’s lawsuit
was an improper post-conviction vehicle to obtain the fourteen color
photographs, and therefore, the trial court did not abuse its discretion by
dismissing Reger’s lawsuit as frivolous.

2.    Article 2.01 and Brady

To
the extent that Reger’s amended petition could be construed as asserting a
violation of article 2.01 and Brady, as opposed to seeking habeas relief
or discovery of the photographs, we hold that the trial court could have
validly dismissed Reger’s suit as frivolous on this additional ground. 
Assuming without deciding that a party could ever enforce code of criminal
procedure article 2.01 and Brady through a civil mandamus proceeding,[14]
Reger’s mandamus petition does not, as a matter of law, set forth facts
establishing a cause of action that would authorize relief.  See Tex.
Code Crim. Proc. Ann. art. 2.01; Brady, 373 U.S. at 87, 83 S. Ct. at
1196–97.  As demonstrated below, Reger’s pleadings do not establish on their
face that Appellees suppressed the photographs at the time of trial, and Reger
has not alleged facts supporting his Brady allegation; i.e., he does not
allege that the photographs are favorable and material.  Thus, Reger has not
pleaded facts that establish a mandatory duty by Appellees to produce the
requested photographs.  See United States v. Bagley, 473 U.S.
667, 674, 105 S. Ct. 3375, 3379 (1985) (citing Brady, 373 U.S. at 87, 83
S. Ct. at 1197) (holding that the Brady rule requires disclosure only of
evidence that is both favorable to the accused and material either to guilt or
to punishment).

Reger
asserts throughout his pleadings that the Appellees suppressed or withheld the
photographs at the time of trial, and he attaches as supporting evidence a
portion of his trial record.  This portion of the record, however, demonstrates
that at the time of trial Reger and his trial counsel were aware of the
photographs’ existence or, at a minimum, their content.  Specifically, the
trial excerpt attached to Reger’s pleadings reveals that his trial counsel
questioned Detective Vennum (the lead detective in Reger’s case at the time of
trial) whether investigating officers had taken photographs of the car in which
the victim had been riding as a passenger immediately before the offense, and Detective
Vennum responded affirmatively.  When Reger’s trial counsel asked the detective
whether he brought the photographs to court, the following dialogue occurred:

A. [Detective Vennum]:
I don’t believe we did.  I can look on this — the transmittals of everything
that we brought over here.  I don’t believe those were part of what was
brought. 

 

Q. [Counsel]: Did
Officer Paul Boone take photographs of the vehicle?

 

A. Yes, sir, he did.

 

. . . . 

 

Q. [D]id he report to
you that he observed the vehicle to have a small amount of blood across the
passenger side in the center area of the hood?  If you’ll look at his report,
please.

 

A. Yes, sir.

 

Q. Did he also report
to you that there was a small area of blood located on the roof of the vehicle
on the passenger side of the vehicle just above the passenger door?

 

A. Yes, sir, he did.

 

Q. Did he further
report to you that he also observed that the inside of the passenger side door
had several blood spots and some dried tissue on it?

 

A. Yes, sir, he did.

 

Q. And further that
he located a small piece of tissue on the passenger side floor board just in
front of the passenger seat?

 

A. Yes, sir, he did.

 

Q. And did he report
to you that the blood and tissue matter appeared to be confined to the
passenger side of the vehicle, including and forward of the passenger side
door?

 

A. Yes, sir, he did.

 

Q. Is Officer Boone
here today?

 

A. No, sir, he’s not.

 

REDIRECT EXAMINATION

 

Q. [State]:  Just for
clarification, the report that Officer Boone made and photographs that he took
and inspection of the car that he made, that wasn’t actually made on the night
of the shooting, it was on April 5th of ’95?

 

A. [Detective Vennum]: 
That’s correct. 

 

. . . . 

 

RECROSS-EXAMINATION

 

Q. [Counsel]: All
right.  Officer — Lieutenant Vennum, did you dispatch Officer Boone on April
the 5th at approximately 5:10 to collect photographic evidence and samples of
blood and other matter from a 1991 red Ford Mustang?  Is that when you
dispatched him to do that?

 

A. [Detective Vennum]:
Yes, sir, it is.[15]

 

While
Reger characterizes this testimony as proof that the State withheld or
suppressed evidence, we disagree and hold that, for purposes of our review, the
quoted testimony confirms that Reger and his counsel were aware of the
photographs or, at a minimum, their content.[16]  See Mass v.
Quarterman, 446 F. Supp. 2d 671, 693 (W.D. Tex. 2006) (stating that Brady
imposes a duty of disclosure of information, regardless of what form that
information might assume).  The prosecution team is not obligated to produce
evidence already known to or discoverable by the defendant under Brady. 
Hayes v. State, 85 S.W.3d 809, 814–15 (Tex. Crim. App. 2002); see also
Mass, 446 F. Supp. 2d at 693 (finding no Brady violation where
specific reports were not disclosed, but the substance of the information
contained in the reports was known by defense counsel); Jones v. State,
234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding Brady
did not apply to medical records known and available to defendant that he did
not procure).  Because Brady is triggered by the discovery, after trial,
of information favorable to the accused that had been known before or during
trial to the prosecution but unknown to the defense, Bagley, 473 U.S. at
678, 105 S. Ct. at 3381, and because Reger’s pleadings and the attached excerpt
from his murder trial establish that Reger and his counsel knew about the
fourteen photographs, Reger’s claim has no arguable basis in law.  See Hamilton,
319 S.W.3d at 809; Scott, 209 S.W.3d at 266.

          In
addition, Reger speculates throughout his mandamus pleadings that the
photographs might be exculpatory and that they could possibly prove his innocence. 
However, courts will not typically order the State to produce information under
Brady based merely upon a defendant’s speculation that the requested
information contains exculpatory evidence.  Michaelwicz, 186 S.W.3d at
615 (citing Page, 7 S.W.3d at 206).  Here, Reger asserts that his
forensics expert has requested the photographs “so that he can ma[k]e an
accurate expert report upon them, which will then go to prove [Reger’s] guilt[]
or innocence.”  Reger further asserts that he

only seeks for the
Respondent(s) to release the above-mentioned 14-color photograph[]s to Louis L.
Akin so that forensic testing can be finally performed on them to determine
whether or not they are exculpatory, inculpatory, or inconclusive.  Through
other scientific evidence already developed, [Reger] believes that those
photograph[]s will ultimately prove to be exculpatory.  However, that call is
left up to the unbias[ed] pro bono expert opinion of Mr. Akin.  If the
Respondent(s) truly believe in [Reger’s] guilt; truly believe in their evidence
to prove [his] guilt, then they should have no fear in allowing [Reger] to
shoot himself in his own foot. 

 

At
the chapter 14 dismissal hearing, Reger asserted, “I’m just seeking now these
photographs, because I have the assistance of an expert, a reconstruction
expert, that has taken my case pro bono and wants to do a full evaluation of
the forensics.”  Reger later stated, “I can’t say how this expert is going to
rule.”  As the trial court correctly noted at the chapter 14 hearing, the evidence
Reger was requesting “may or may not show anything” and “in that situation,
they don’t have to turn it over.”

          Reger
fails to provide even a theory regarding how the photographs would be favorable
and material.[17]  As Reger notes in his
petition, he pleaded not guilty to the State’s murder charge and asserted a
self-defense theory, claiming that the victim was the aggressor.  While he
asserted in his petition that he needed access to the color photographs so that
his expert “may decide whether Appellees or their agents knew that [eyewitness
Christina Rene Storey] had lied about the shooting events,” i.e., the sequence
of shots and their angles, he failed to explain how the fourteen color
photographs could support his argument.  In fact, we note that the affidavit
Reger’s trial counsel provided in connection with Reger’s initial habeas
application—which Reger attached to his amended petition in this case—stated:

          It was Mr.
Reger who always insisted that he had acted in self-defense and that that was
the defense he wanted to present on a not guilty plea.  I discussed with him
the possible application of the lesser charge of Voluntary Manslaughter . . . .
 A number of times prior to trial, and prior to his testimony during trial, I
also discussed with Mr. Reger the fundamental difficulty that was posed by the
results of the physical evidence and of the autopsy, which showed the deceased,
who was not armed, had been shot four (4) times with Mr. Reger’s rifle at
different angles and distances.  I explained that the physical evidence made
[an] argument of self-defense very tenuous at best.  However, Mr. Reger
explained both to me and to [an investigator] at different times not only prior
to but also during trial a sequence of events as to the actual shooting that
would comport with the autopsy results.  However, Applicant did not testify as to
this particular sequence of events at his trial.

 

Because
Reger merely speculates generally in his petition that the photographs are
favorable and material, he has failed to plead facts establishing the second
and third elements of his Brady claim.

Because
Reger failed to plead facts establishing that the Appellees suppressed the
photographs or otherwise committed a Brady violation, Reger has not
established that the Appellees have a mandatory duty to produce the
photographs.  Thus, the trial court did not abuse its discretion in dismissing
his suit.  See Tex. Civ. Prac. & Rem. Code Ann. '
14.003(b)(2).

We
overrule Appellant’s first and third issues. 

B.  Chapter
14 Discovery

In
his second issue, Reger claims that the trial court abused its discretion by
refusing to allow him to conduct discovery before dismissing his mandamus claim
because mandamus proceedings are subject to discovery as in any other civil
suit.  Chapter 14 operates according to its own distinct procedures, and a
trial court may dismiss a claim either before or after service of process—i.e.,
before an answer is filed—if it finds the claim is frivolous.  Tex. Civ. Prac.
& Rem. Code Ann. ' 14.003(a); see Burnett
v. Sharp, 328 S.W.3d 594, 597 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  “[T]he applicability of chapter fourteen is not contingent on the
defendant’s satisfaction of any procedure rule.”  McCollum v. Mt.
Ararat Baptist Church, Inc., 980 S.W.2d 535, 537 (Tex. App.—Houston [14th
Dist.] 1998, no pet.).  “This is consistent with the purpose of chapter
fourteen which is ‘to control the flood of frivolous lawsuits being filed in
the courts of this State by prison inmates, consuming valuable judicial resources
with little offsetting benefit.’”  Id. (quoting Hickson v. Moya,
926 S.W.2d 397, 399 (Tex. App.—Waco 1996, no writ)).  Further, if the trial
court conducts a hearing on a defendant’s motion to dismiss an inmate’s suit
under chapter 14, section 14.003(d) requires that the trial court “suspend
discovery relating to the [inmate’s] claim pending the hearing.”  Tex. Civ.
Prac. & Rem. Code Ann. ' 14.003(d).  The trial court
therefore did not abuse its discretion by dismissing Reger’s suit before
allowing him to conduct discovery.  See Pohl v. Livingston, No.
03-06-00625-CV, 2008 WL 974785, *2 (Tex. App.—Austin, Apr. 10, 2008, no pet.)
(mem. op., not designated for publication) (holding trial court did not err by
suspending discovery in light of section 14.003(d)’s automatic suspension of
discovery).  We overrule Reger’s second issue.

V.  Conclusion

          Having
overruled each of Reger’s three issues, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER and MCCOY, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting
by Assignment)

 

DELIVERED:  August 11, 2011









[1]See Tex. R. App. P. 47.4.





[2]Tex.
Gov’t Code Ann. '
24.011 (West 2004), '
552.028(b) (West 2004); Tex. Code Crim. Proc. Ann. art. 2.01 (West 2005).

 





[3]Tex. Civ. Prac. & Rem.
Code Ann. '
14.003(a)(2) (West 2002).





[4]Three
individuals (none of whom were acting as Reger’s attorney) made PIA requests on
Reger’s behalf, including Kristi Cottingham, John A. Pizer, and Shirley Hooks. 





 

[5]Reger asserts that the
fourteen color photographs depict the red 1991 Ford Mustang that the victim had
been riding in before his death.





[6]Section 552.321 of the
government code provides for statutory mandamus relief in certain instances
that do not apply in this case.  Tex. Gov’t Code Ann. ' 552.321
(West 2004).





[7]Reger does not challenge
the discretionary nature of section 552.028 on appeal, noting instead that his
mandamus suit combined section 552.028 with article 2.01 and that, therefore,
his mandamus suit was based in law and fact.  To the extent that the trial
court dismissed Reger’s lawsuit due to the discretionary nature of article
552.028, it did not abuse its discretion.  See Tex. Gov’t Code Ann. ' 552.028(a); Harrison,
34 S.W.3d at 663; Moore, 960 S.W.2d at 83.  Additionally, Reger’s
assertion that Detective Vennum “waive[d] the statutory exceptions under
Section 552.028” is without merit because section 552.028 is not considered an
“exception” that can be waived under sections 552.301–.302 of the government
code.  Compare Tex. Gov’t Code Ann. '
552.028 with id. '' 552.301–.302 (West
Supp. 2010).





[8]We address Reger’s first
and third issues together.





[9]Reger asserts that because
Appellees did not object to, or argue against, the application of article 2.01
to the trial court, they failed to preserve error and are “judicially estopped”
from doing so on appeal.  Judicial estoppel does not apply because Appellees
have not taken inconsistent positions in subsequent actions.  See generally
Schmidt v. State, 278 S.W.3d 353, 358 (Tex. Crim. App. 2009). 
Additionally, the preservation rule applies to the complaining party on
appeal.  See Tex. R. App. P. 31; Reyna v. State, 168 S.W.3d 173,
176–77 (Tex. Crim. App. 2005) (citing Martinez v. State, 91 S.W.3d 331,
335–36 (Tex. Crim. App. 2002)).





[10]Reger asserts on appeal
that he raised a Brady/ineffective assistance claim regarding these same
fourteen color photographs in his initial state habeas claim.  In their brief,
the Appellees state generally that Reger has previously made unsuccessful
allegations of undisclosed exculpatory evidence.  The filings referenced by the
parties are not part of the appellate record before this court.





[11]Article 11.07, section 4
provides in part that a court may not consider the merits of or grant relief
based on a subsequent application unless the application contains sufficient
specific facts establishing that (1) the current claims and issues have not
been and could not have been presented previously in an original application or
(2) by a preponderance of the evidence, but for a violation of the United
States Constitution no rational juror could have found the applicant guilty
beyond a reasonable doubt.  Tex. Code Crim. Proc. Ann. art. 11.07, ' 4.





[12]Reger explains that his
subsequent habeas application must include a prima facie claim of innocence and
that he cannot meet this standard without obtaining the photographs so that his
expert can perform a forensic reconstruction.  While we express no opinion
about the potential outcome of a subsequent habeas application filed by Reger,
we note that in his mandamus petition, Reger stated that the autopsy report and
the pathologist’s testimony refute eyewitness Christina Rene Storey’s version
of events and that he “has made a prima facie showing to this court that his
underlying conviction: (1) is not final due to being illegal- null and void;
and (2) that the results are not reliable, fair, or just.”  Further, our
analysis does not depend on Reger’s potential for success in a subsequent
habeas application.





[13]Reger specifically
asserted that his mandamus action was not barred under Heck v. Humphrey,
512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994) (distinguishing claims that are
properly brought in habeas and those that may be brought under 42 U.S.C. ' 1983 and holding that when
“a judgment in favor of the plaintiff would necessarily imply the invalidity of
his conviction or sentence,” ' 1983 is not an
available remedy).





[14]See Dist. Att’ys
Office for the Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2320
(2009) (indicating that “Brady is the wrong framework” to apply in
assessing a convicted defendant’s right to access evidence).  Osborne filed
suit under 42 U.S.C. '
1983 to access evidence from his trial in order to subject it to DNA testing.  Id.
at 2315.  The Court rejected the Ninth Circuit’s reasoning that the State of
Alaska’s failure to turn over DNA evidence for testing for a post-conviction
proceeding violated Osborne’s due process right to exculpatory evidence under Brady. 
Id. at 2319–20.  The Court explained that “Osborne’s right to due
process is not parallel to a trial right, but rather must be analyzed in light
of the fact that he has already been found guilty at a fair trial, and has only
a limited interest in postconviction relief.”  Id. at 2320.





[15]We have a copy of
Reger’s trial record from his direct appeal, and we take judicial notice of a
portion of the closing argument of Reger’s trial counsel in which he tells the
jury, “Actually, you could use some more photographs.  You could use the
photographs of the car itself which were not brought to court.  It’s true
that I didn’t subpoena them, but the State didn’t bring them down either
and you should have them.”  [Emphasis added.]  See Goodson v. State,
221 S.W.3d 303, 304 n. 2 (Tex. App.—Fort Worth 2007, no pet.) (noting that
appellate court may judicially notice its own records in the same or related
proceeding involving the same or nearly the same parties).  Defense counsel
also reiterated in detail the blood evidence found in the car.

 





[16]Notably, defense counsel
did not object that the State had failed to previously produce the photographs,
and he did not request a recess or move for a continuance in order to obtain
and view the photographs.





[17]Indeed, even assuming arguendo
that the State did not disclose the photographs before trial and that the photographs
constituted Brady material, Reger either waived any potential Brady
violation claim or failed to show that any Brady error prejudiced him
when he failed to request a continuance upon becoming aware of the
photographs.  See State v. Fury, 186 S.W.3d 67, 73–74 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d) (holding that a defendant’s failure to request a
continuance indicates that tardy disclosure of withheld evidence was not
prejudicial for purposes of Brady violation claim); Gutierrez v.
State, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref’d) (holding
that, as a general rule, the failure to request a continuance waives any Brady
violation).